THE STATE v. JAMES MURRAY, *Appellant.*

Division Two, February 12, 1895.

1. **Criminal Practice**: MURDER: EVIDENCE: VOLUNTARY STATEMENTS. A written statement voluntarily made by defendant, charged with murder, after his arrest, is admissible on the trial to connect him with the crime.

2. ————: ————: ————: ADMISSION: SILENCE OF ACCUSED. Evidence that the accused, after his arrest, remained silent while being charged with the crime is incompetent as an admission of guilt where the circumstances did not call for a reply on his part.

3. ————: ————: ————: ————: ————: HARMLESS ERROR. Error however, in admitting testimony as to defendant's silence will not cause a reversal of the judgment of conviction where it is shown by defendant's own admission that he was present when the crime was committed and it is positively shown by other evidence that he fired the fatal shot.

4. ————: SEPARATION OF JURORS: HARMLESS ERROR. The facts that the jurors, through the inadvertence of the officers in charge of them, were permitted to separate for a short time for personal purposes does not constitute a sufficient ground for reversal where the presumption of prejudice is completely rebutted by proof that none of them were approached or spoken to during that time.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*O. J. Mudd* for appellant.

*R. F. Walker*, Attorney General, and *R. L. Mudd*, Prosecuting Attorney, for the state.

(1) The state had a right to show that the defendant, upon being accused of this crime by his brother, remained silent and failed and refused either to deny the charge or to assert his innocence; his silence, under the circumstances, was a fact to which the jury were

entitled.   *Ettger v. Com.*, 98 Pa. St. 338; *Robbins v. State*, 9 Tex. App. 671; *Murphy v. State*, 36 Ohio St. 628; *Kelly v. People*, 55 N. Y. 565; *State v. Suggs*, 89 N. C. 527; *Com. v. Brown*, 121 Mass. 69; *Com. v. Sliney*, 126 Mass. 49; *People v. Estrado*, 49 Cal. 171. Even though the testimony complained of was inadmissible, yet it could not have prejudiced the defendant, for the reason that it tended to establish no additional fact than those already proved.   *State v. Emery*, 76 Mo. 348; *State v. Owens*, 78 Mo. 377; 2 Thompson on Trials, secs. 2402, 2403.   (2) The burden is upon the state to show satisfactorily and conclusively that no prejudice resulted to the defendant from the separation of the jury, and that they were not subjected to any improper influence, and this was met by the state in this case.   *State v. Orrick*, 106 Mo. 127; *State v. Howell*, 117 Mo. 341; *State v. Sansone*, 116 Mo. 11; *State v. Avery*, 113 Mo. 475; *State v. Steifel*, 106 Mo. 129.

GANTT, P. J.—At the January term, 1894, of the circuit court of St. Louis county, the defendant, James Murray, together with his brother, Edward Murray, was indicted for the murder of Edgar Fitzwilliams, the conductor of a car on the Midland street railway, in St. Louis county, on the twenty-third day of September, 1893.   At the same term he was duly arraigned, and entered a plea of not guilty.   A severance was granted, and, on application of counsel for defendant, the cause was continued to the May term, 1894.   The cause was tried at the May term and resulted in the conviction of defendant of murder in the first degree. His motion for new trial was overruled, and he was sentenced by Judge Hirzel to be hung on September 5, 1894, from which sentence he has appealed to this court.

From the record we glean the following facts as disclosed by the evidence: On Saturday night, December 23, 1893, the defendant, James Murray, his brother, Edward Murray, "Dude Charley," and an unknown person, four negro desperadoes, met and arranged to rob the conductor of a car on the Midland street railway, which was an electric car on Page avenue, near Sutter avenue, in St. Louis county, Missouri. When the car passed in an easterly direction going to the end of the line where the Midland railway connected with the suburban line, these four negroes were waiting for its return near Sutter avenue; they were heard and seen by residents of that immediate vicinity. When the car passed back on its return trip, Edgar Fitzwilliams, who was the conductor in charge, and Miss Lizzie Schueble, a passenger, were the only persons on the car. It was the purpose of these four negroes to rob the conductor at Sutter avenue. Evidently in answer to a signal from them, the conductor stopped the car which they boarded, the defendant and an unknown negro getting on in front or west end of the car, Ed Murray and "Dude Charley" getting on the rear end. The arrangement was, that, when the conductor was assaulted, or, to use their language, "done up," either Ed Murray or "Dude Charley," who were on the rear end of the car, was to pull the trolley line, which immediately extinguished all lights, the electric circuit being broken. Upon getting on the car, as soon as the conductor came in to collect the fares, three of these negroes, who were in the car ("Dude Charley" having remained on the rear end to operate the trolley line), pulled their guns, this defendant shooting the conductor. Miss Schueble then made her escape from the car, and, about the time of her leaving, the trolley line was pulled and the lights extinguished, and the defendant, with the other two

negroes who were in the car, rifled the pockets of the conductor. After they had robbed him of his money and watch, they abandoned the car and made their escape. The young lady gave the alarm, and when the car was reached by some of the people living in the vicinity the conductor was found lying with his head toward the west or front end of the car, dead. The point at which the killing was done was in St. Louis county, Missouri.

Some time thereafter the defendant and his brother were arrested upon another charge, and placed in the hold-over in St. Louis city. Here the defendant made a voluntary written and oral statement to Chief Desmond, in the presence of four or five different persons. Prior to this statement, however, he and his brother were brought out, and Ed Murray made an oral statement in which he admitted his connection with the killing, and stated, in substance, that his brother, the defendant, had fired the shot that killed Fitzwilliams, and, after killing him, had robbed him. During this narrative of the crime, the defendant remained silent, neither denying nor affirming the story. After the arrest of the defendant, Miss Schueble, the passenger, went down to the hold-over, and there promptly and positively identified the defendant as the negro who did the killing. It is also shown, by the testimony of the sheriff of St. Louis county, that this defendant admitted to him that he was present aiding and assisting in the robbery at the time of the killing. Two prisoners, who were in the hold-over at the time the defendant was there, testify to statements made to them by the defendant, in which he admitted the killing of Fitzwilliams. The written statement of the defendant is not reproduced here, on account of its extreme vulgarity and obscenity.

The defendant was not sworn as a witness in his

own behalf, nor did he introduce any testimony except the record showing the reward offered by the St. Louis county court for the apprehension of the murderer, and the identification by clerk.

A new trial is sought upon three grounds, to wit: The admission of incompetent evidence, improper instructions, and a separation of the jury after they were sworn to try the cause and before the evidence was heard.

I.   The evidence of which the defendant complains is the statement of the defendant himself, in writing, and subscribed by him in the presence of Chief Desmond and four or five other witnesses.   The writing was fully identified by the stenographer, who had transcribed it.   It was shown that it was read to defendant prior to his signing.   It was voluntary, and there is nothing to show that it was obtained by threats or promise of immunity.   It was competent and relevant, because it shows defendant's presence at, and a complicity in, the crime.   Under these circumstances it is hard to conceive on what ground it could have been excluded.

Defendant also objected to evidence of a statement made by his brother in his presence, in which the brother positively asserted that defendant was the conspirator that fired the shot which killed Fitzwilliams and afterwards robbed his person.   The distinction must be noted that this evidence was not offered as the statement of a co-conspirator.   As such it would most clearly be incompetent, because the conspiracy, at this time, was fully consummated.   It was offered for the purpose of showing his silence, when he was charged by his brother, in his presence, with being the murderer of Fitzwilliams.   Its admissibility for this purpose is the question for consideration.

This court has been very careful in applying the

rule which permits the silence of one charged with crime to be received as an admission. Consequently, it was held in *State v. Mullins*, 101 Mo. 514, that it has no application, whatever, to statements given in evidence in judicial proceedings, for in such cases the accused is not at liberty to interpose and contradict the evidence when and where he pleases, and it was held that a coroner's inquest is a judicial proceeding, and no inference of guilt could be drawn from the silence of the accused, when evidence was given against him.

In *State v. Young*, 99 Mo. 666, when the defendant was under arrest, it appeared that one Craft said to the marshal, who had the prisoner, "You have got your right man; you don't have to go any farther to get him;" and this statement of Craft was held incompetent for two reasons: because defendant was under arrest, and because made by a stranger in his presence and not to him. In this last case the court declined to say whether, standing alone, it would constitute *reversible error*.

The inference that silence is tantamount to an admission of guilt must rest upon the idea of acquiescence, and it is not consistent with sound reason to imply an acquiescence from silence, unless the circumstances are such as to afford the party an opportunity to act or speak, and such, also, as would naturally call for some action or reply from prudent men similarly situated.

The rule is well and tersely settled in *Commonwealth v. Brown*, 121 Mass. 69, as follows: "A statement made in the presence of a defendant, to which no reply is made, is not admissible against him, unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circumstances as naturally to call for a reply, unless he intends to admit it. But, if he makes a reply, wholly

or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence. *Commonwealth v. Kenney*, 12 Met. 235.''

The circumstance that the accused is in custody, while entitled to weight, will not of itself exclude the statement if the circumstances otherwise properly called for a reply or denial by him.   *Commonwealth v. Brown*, 121 Mass. 69; *Murphy v. State*, 36 Ohio St. 628; *Kelley v. People*, 55 N. Y. 565; *People v. Wentz*, 37 N. Y. 303; *M'Kee v. People*, 36 N. Y. 113; *Commonwealth v. Crocker*, 108 Mass. 464.

We do not think the circumstances detailed by officer Freese were such as called for a statement by defendant.   He must have felt the restraint of his surroundings, and his silence under such circumstances would constitute the very slightest, if any, evidence of his guilt.

But, notwithstanding we hold the proof of defendant's silence was erroneous, we are also clear that, under the facts of this case, this alone ought not to cause a reversal of this judgment.   Error is presumed prejudicial and it devolves upon the state, when it is shown, to demonstrate that it wrought no harm to defendant. Upon this record we think this is shown.   The defendant, out of his own mouth, confesses he was one of the party who murdered Fitzwilliams.   This appears both orally and by his written confession.   He was positively identified by the young lady, who sat in the car and saw the crime committed, as the one who fired the shot. He admits she saw them that night.   Moreover, there is little of additional evidence in the statements of his brother.   They differ merely as to who fired the shot, and, in a legal aspect, it mattered not who discharged the pistol.   They were both present, actively engaged in the murder as the result of a conspiracy.   Under the circumstances, we think the admission of Desmond's

statement as to the silence of defendant during his brother's statement was not prejudicial, and, therefore, not reversible error. *State v. Jennings,* 18 Mo. 435; *State v. Emery,* 76 Mo. 348; *State v. Owen,* 78 Mo. 377.

II.   No specific objections are pointed out to any of the instructions.   We have examined them and find nothing of which defendant could complain.   They are such as are usually given, and have received the approval of this court.

III.   The separation of the jury is assigned as error. It appears that when the challenges had been made the court was on the point of adjourning for the noon hour.   Before admonishing the jury that they must be kept together under the supervision of the sheriff, and at a time when the attention of the learned judge who tried the cause, and of the prosecuting attorney, was diverted by some matter, four of the jury, without consulting the court, went to the water closet in the courthouse, and the fifth juror went across the street to place his team in the custody of a neighbor to take home. Immediately upon discovering this separation, the court caused all these jurors to be brought together, and after that they were kept together.   On the hearing of the motion the prosecuting attorney assumed the burden of showing beyond all question that no member of these five was approached, or spoken to, by anyone during this momentary separation.   The presumption of prejudice was completely rebutted by the most satisfactory evidence without contradiction of any character.   It results that defendant had no ground for complaint on account of this separation. *State v. Orrick,* 106 Mo. 127; *State v. Steifel,* 106 Mo. 129; *State v. Sansone,* 116 Mo. 11; *State v. Howell,* 117 Mo. 341; *State v. Avery,* 113 Mo. 475.

The record discloses a cruel, unprovoked murder, and the evidence points out the defendant as one of

the crowd who killed and robbed Fitzwilliams. The judgment of the circuit court is affirmed, and the sentence of the law will be carried into execution. All of this division concur.