# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1904.

---

*(Continued from Volume 185.)*

---

## THE STATE v. SWISHER, Appellant.

### Division Two, January 31, 1905.

1. **CHANGE OF VENUE: Application: No Affidavits.** There is no error in refusing a change of venue when the application therefor is not supported by the affidavit of the defendant and two witnesses, as required by statute.

2. **———: Jury Panel: Accomplice.** The mere fact that the jury panel which was selected to try defendant was a part of the regular panel from which a jury was chosen to try another person who was jointly indicted with defendant for the same crime, constituted no reason for granting defendant a change of venue.

3. **INSTRUCTION: Credibility of Witnesses: Conflicting Evidence.** Where the evidence is positive and conflicting as to the identity and presence of defendant at the place where and the time when the crime was committed, there is no error in the giving of an instruction on the credibility of the witnesses and the right of the jury to reject the testimony of any witness whom they believe has willfully sworn falsely to any material fact.

4. **APPELLATE PRACTICE:** Weight of Evidence: Province of Jury. While the appellate court will reverse a case in which the evidence is so palpably weak that a defendant should not be deprived of his life or liberty thereon, or in which, conceding the truthfulness of all the evidence, it falls short of that quantum or character required to convict, yet it will not undertake to weigh conflicting evidence and decide which is entitled to most probative effect, that being the exclusive province of the jury.

5. **ROBBERY:** *Identification of Defendant.* Where the prosecuting witness positively identifies the defendant as one of the men who robbed him, and testifies that defendant stood right in front of him, that he wore no mask, and that the nearness of an electric light enabled him to see the defendant distinctly, the question of defendant's identity is sufficiently established, if the jury believed the testimony of the prosecuting witness.

6. ————: **Alibi:** Admission of Defendant: Order of Introducing Testimony. The order of introducing testimony is largely within the discretion of the trial court. And where the court and jury were advised that the defense would be an alibi, no error was committed in permitting the State to prove, in its case in chief, a statement made by defendant to an officer, at the time he was arrested, that he was in a pool room when the robbery was committed. It was for the jury to weigh this evidence in connection with the testimony of defendant's father and sisters that he was at home at the time of the robbery.

7. **REMARKS OF ATTORNEY:** Defendant's Failure to Testify. Remarks of the attorney for the State discussing defendant's statement made to officers soon after his arrest, as to his whereabouts at the time the offense was committed, can not be held to be an allusion to defendant's failure to testify upon the trial.

8. ————: **Silence of Defendant After Arrest:** Presumption of Guilt. The mere silence of one charged with crime, while under arrest, is no evidence of his guilt. The unfavorable presumption arising from a failure to deny the crime applies only before the defendant is under arrest, and where the charge is not made in a judicial proceeding. And the argument of the State's attorney, in this case, that a presumption of defendant's guilt might be drawn from the fact that "he did not utter a syllable" after he was arrested, charged with the offense, and identified as the offender, was improper, and its approval by the court, over the objection and exception of defendant, constituted reversible error.

Appeal from St. Louis City Circuit Court.—*Hon.*
*Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*Lee W. Hagerman* for appellant.

(1)   The admission of officer Michael Cremins' testimony of a statement made by defendant to the police was error.  This testimony as submitted was entirely inadmissible, and its admission is fatal error, for the reason that it was used to attack the credibility of the witnesses who swore to the defendant's alibi, and was in its nature prejudicial to the defendant's case in the minds of the jury. Bates v. Halliday, 31 Mo. App. 162; Green v. State, 13 Mo. 382; State v. Marshall, 36 Mo. 400; State v. Nocton, 121 Mo. 552.   Confessions, i. e., those statements which admit guilt, and admissions, those statements in criminal cases which concede subordinate facts relating to the crime, are admitted because they are against the interest of the person making them, and there is a presumption in favor of their truth which overbalances their inherent weakness. The testimony of officer Cremins has none of these qualifications to make it admissible.  It was a denial of guilt, and of all connection with the crime,  And not being admissible in chief, neither was it admissible as to any of the issues of proof raised by the introduction of testimony as distinguished from the ultimate issues raised by the pleadings.  Ayers v. Watson, 132 U. S. 394, 113 U. S. 594; 1 Greenleaf on Ev., secs. 462-464; Weir v. McGee, 25 Tex. Supp. 32.   (2)  In his closing address to the jury Mr. Maroney, the assistant circuit attorney, commented on the failure of the defendant to take advantage of his right to testify in his own behalf in the case.  This comment was made covertly and indirectly and in the way of allusion.  The statement was at the time objected to, and the court overruled the objection.  This was fatal error, as shown by the clear prohibition of the Missouri statute.  State v. Brownfield, 15 Mo. App. 593; State v. Graves, 95 Mo. 510;

State v. Moxley, 102 Mo. 393; Angelo v. People, 96 Ill. 209. (3) The courts of this State have steadfastly held that the silence of a defendant when arrested and charged with a crime, and when identified, is no evidence tending in the slightest degree to prove his guilt. State v. Murray, 126 Mo. 616; State v. Mullins, 101 Mo. 514; State v. Young, 99 Mo. 666.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) The motion for a change of venue is not supported by the affidavit of the defendant, nor is it supported by the affidavit of two creditable disinterested citizens, as the statute requires, nor does the record show that any proof was offered as to the truth of the allegation by legal and competent evidence, or by any evidence. (2) Complaint was made that error was committed in instructing the jury that, if they believed any witness knowingly swore falsely to any fact, they were at liberty to reject all or any portion of such witness's testimony. This declaration of law has frequently been approved. The propriety of giving it in any case must be left largely to the judgment and discretion of the trial court. It is always proper to give it when there is an irreconcilable conflict in the testimony. Such conflict was here. The testimony of the prosecuting witness, that the defendant had robbed him, was positive. The testimony of defendant's witnesses, that defendant was not present at the time the robbery occurred, was likewise positive. There is no intimation in this instruction that the jury were to disbelieve the defendant's witnesses. The instruction could have been applied as well to the testimony of the prosecuting witnesses as to them. The instruction was proper. State v. Buchler, 103 Mo. 211; State v. Hickam, 95 Mo. 332. (3) Counsel earnestly insists that the court erred in permitting officer Cremins to

testify that the defendant stated to Chief Kiely, when being interrogated by him, that at the hour of eleven o'clock, the time when the robbery occurred, he was in a poolroom on Sixth street; that he stayed in said poolroom until about twelve o'clock, when he came to the corner of Tenth and Walnut streets, where he met Lizzie Mitchell and went north to 113 South Tenth street and remained all night. This evidence was properly admitted, because counsel had declared, in his opening statement to the jury, that the defense was founded on an alibi. It is probably true that counsel stated that the defendant was at the home of his father on the night of the robbery, and that he would prove this by the witnesses who afterwards testified. To rebut the alibi, which was probably set forth in detail by counsel in his opening statement, the State introduced testimony which tended to show that, when the defendant was first charged with the crime, he fixed his alibi at quite another and different place. Counsel take the position that this statement of the defendant was self-serving in its nature. If self-serving, then defendant ought not to complain. This was a strong circumstance tending to weaken the alibi which the defendant attempted to establish at the trial. The defendant could not have been at both places at the same time. A jury had the right to this circumstance, in order to weigh intelligently the testimony. (4) It is well-established law that the silence of a person, when charged with a crime, is a circumstance to be considered. If it may be considered by the jury, it may be remarked upon by the prosecutor. When one is charged with a crime, and fails to deny the charge, an unfavorable presumption against him arises. The law presumes that innocence will then assert itself, and when one remains mute, when thus charged, it is a circumstance to be considered by the jury, and the industrious prosecutor will seldom fail to comment on the fact.

GANTT, J.—On an indictment for robbery in the first degree, preferred by the grand jury of the city of St. Louis on December 22, 1903, the defendant was convicted and sentenced to the penitentiary for ten years. From that sentence he appeals.

James Mosier, the prosecuting witness, testified that he reached St. Louis on the ninth day of December, 1903, at 8:30 o'clock, in the evening of that day, and went to 1214 North First street, in St. Louis, in order to procure board and a room. He had previously lived at this house. On arriving there, he ascertained that he could not, at that time, procure lodging and board, and he was compelled to seek food and shelter elsewhere. Accordingly, he went to the Erie House and there procured a bed for the night, after having done which, he concluded he would go to the depot and get his baggage, which had been left there, so he started up Clark avenue to Sixth street, and from Sixth street he went over to Walnut and started westward. The evening was cold and he walked rapidly. He observed a man, who was walking still more rapidly, pass him, and immediately, when this other person had passed, he turned, presented a gun and ordered the prosecuting witness to go into the alley. The prosecuting witness, at first, was reluctant to do this; but on being approached from the rear by another man, who was aiding the party with a gun, he consented to go into the alley. When he was sufficiently removed from nearness to the street to justify the belief that he would be unobserved, the defendant and his partner in crime began to search the person of the prosecuting witness. The prosecuting witness remonstrated with the robbers, and was finally told that if he did not hush they would blow his brains out.

The result was that the defendant and the person jointly indicted with him procured from the prosecuting witness one hundred dollars and a gold watch.

The prosecuting witness identified the defendant

as the person who searched him, and who took from his pockets a tin tube containing the one hundred dollars. He described the color of his suit, the length of his coat, and the kind of hat he wore on the occasion of the robbery.

The defendant did not go upon the witness stand. He contented himself by attempting to prove an alibi by the immediate members of his family.

There was some testimony tending to show that the defendant did not live at home, but spent most of his time in company with a woman who was sometimes referred to in the record as defendant's wife. The record, however, does not disclose whether the defendant was married.

Various errors are assigned for reversal which will be considered in the order of the appellant's belief.

I.  There was no error in refusing the change of venue. The application therefor was not supported by the affidavits of the defendant and two witnesses as required by the statute. [State v. Hopkirk, 84 Mo. 278.] Nor was any evidence offered to support the application. Moreover, the application in itself was devoid of merit. The mere fact that the panel which was selected to try defendant was a part of the same regular panel from which a panel was chosen to try Tibbetts, who was jointly indicted with defendant for the same crime, constituted no reason whatever for granting defendant a change of venue. It does not even appear that Tibbetts was convicted, but if it had, this was no ground for a change of venue.

II.  There was no error in giving the instruction that if the jury believed any witness had knowingly and willfully sworn falsely to any material fact they were at liberty to disregard the whole or any portion of his or her testimony. In view of the positive and unqualified testimony of the prosecuting witness as to the identity and presence of defendant at the place of the

robbery, and the equally positive evidence of the father and sisters of defendant that he was at the home of his father all that night and until the morning of the tenth of December, there is no reason why the instruction should not have been given. It nowhere intimates or assumes that it was the father or sisters that had falsely sworn about the matter. The instruction applied as well to the testimony of the prosecuting witness.

III. Much stress is laid upon the unsatisfactory proof upon which defendant was convicted.

The prosecuting witness identified the defendant as one of the robbers. He says he stood right in front of him. Had no mask over his face and there was an electric light not over forty yards distant. The evidence satisfied the jurors and their verdict met the approval of the circuit judge who presided at the trial.

Surely it can not be said that if the evidence was believed, it was not sufficient, and obviously, it was the province of the jury, and not this court, to weigh and determine the credibility of the witnesses. While we may, without transgressing our limitations as judges, reverse a case in which the evidence is so palpably weak that no citizen ought to be deprived of his life or liberty thereon, or in which, conceding the truthfulness of everything said, it falls short of that quantum or character of evidence required by law to convict, it is the settled doctrine that this court will not undertake to weigh the conflicting evidence and decide which is entitled to most probative effect. The verdict of the jury was supported by sufficient evidence if believed by the jury, as it plainly was. Counsel for defendant urges with great earnestness the evidence offered by defendant to prove an alibi, but it was for the jury to weigh that evidence in connection with the evidence of officer Cremins, who testified that the defendant, when arrested, accounted for his whereabouts at the

time of the robbery by saying he was then in a poolroom on Sixth street. He could not have been at his father's house and the poolroom at the same time. Nor was there any error in permitting the State to prove, in its case in chief, the defendant's voluntary statement that he was in the poolroom, as the court and the jury had already been advised by defendant's counsel that the defense would be an alibi. Much must be and is confided to the discretion of the trial judge as to the order of testimony, and we are unable to see how the admission of defendant to the officer was prejudicial in the order in which it was admitted. No doubt can exist as to its competency.

IV. By far the most serious contention is that the prosecuting attorney made erroneous statements of the law calculated to mislead the jury.

The objectionable remarks of the prosecuting attorney were as follows: "There is every element in the case proven directly and positively, *and the defendant when charged with the crime and identified as the robber did not utter a syllable.*"

To this Mr. Hagerman, counsel for defendant, objected, and the judge of the circuit court replied, "That is *not* an improper argument on the testimony," to which ruling the defendant by his counsel at the time excepted.

Thereupon, Mr. Maroney, the assistant circuit attorney, continued his argument and said, "When the defendant was asked (after his arrest), 'where were you on December 9th about 11 o'clock?' and before there was an opportunity of fixing an alibi, he answered he was in a poolroom on Sixth street from ten o'clock until twelve o'clock. That was his answer. The evidence stands undisputed, and you, under the instructions of the court, must take that as true unless something in the attitude of the witnesses indicates that they were telling a falsehood." The law of this State positively forbids any reference by the prosecuting attor-

ney to the failure of the defendant to avail himself of his right to testify in his own behalf, on the trial of the case. [Sec. 2638, R. S. 1899.]

A careful consideration of the argument of the assistant circuit attorney in this case shows that in his remarks he made no allusion to the failure of the defendant to testify on the trial. He was on the contrary discussing the defendant's statement made to the officers soon after his arrest as to his whereabouts at the time of the robbery.

So far, his argument was legitimate and so much of the grounds for a new trial as assigned these remarks as error is not tenable, but did the prosecuting attorney have the right to argue that because the defendant did not, when charged, *after his arrest,* with the offense, deny his complicity in the crime, it was proof of his guilt?

In State v. Murray, 126 Mo. 615-616, it was said: ''This court has been very careful in applying the rule which permits the silence of one charged with crime to be received as an admission. Consequently, it was held in State v. Mullins, 101 Mo. 514, that it has no application, whatever, to statements given in judicial proceedings, for in such cases the accused is not at liberty to interpose and contradict the evidence when and where he pleases, and it was held a coroner's inquest is such a judicial proceeding, and no inference of guilt could be drawn from the silence of the accused when evidence was given against him. In State v. Young, 99 Mo. 666, when the defendant was under arrest, it appeared that one Craft said to the marshal, who had the prisoner, 'You have the right man; you don't have to go any farther to get him,' and this statement of Craft was held incompetent for two reasons: because the defendant was under arrest, and because made by a stranger in his presence and not to him.'' When the prosecuting attorney came to argue that case, he said; ''The presumption of law in this State is that *when a charge*

*is made against a party in his presence* and he does not deny it, he is presumed to be guilty.'' It was ruled misconduct calling for a reversal.

The rule of evidence which allows the silence of a person to be taken as an admission or confession of the truth of the matters stated in his presence is based upon the assumption that the party so charged is at liberty to speak and proceeds upon the ground that the circumstances are such as to call upon him for a reply. [1 Greenleaf's Ev. (14 Ed.), sec. 197.]

In Commonwealth v. Brown, 121 Mass. 69, the rule was stated to be: ''A statement made in the presence of a defendant, to which no reply is made, is not admissible against him, unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circumstances as naturally to call for a reply unless he intends to admit it. But if he makes a reply, wholly or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence,'' citing Com. v. Kenney, 12 Metc. 235.

In State v. Murray, 126 Mo. 611, it was held that evidence of a statement made by a brother of defendant in his presence and after his arrest that defendant fired the fatal shot, and was not denied by defendant was incompetent, but not reversible error because the defendant in an oral and written confession admitted he was one of the conspirators who murdered Fitzwilliams.

That mere silence of one charged with crime, while under arrest, is not evidence against him, see, also, State v. Howard, 102 Mo. 148; State v. Foley, 144 Mo. l. c. 618; State v. Hale, 156 Mo. l. c. 108.

Now applying this well-settled rule to the facts of this case:

The prosecuting witness says he next saw defendant after the night of the robbery down in the hold-over, but details no statement he made at the time.

Michael Cremin, the police officer who arrested defendant, says that when he arrested defendant, "I accused him of being implicated in the hold-up of Mr. Mosier. He didn't make any statement at that time. Made no reply. I brought him to Chief Desmond's office and had a conversation with him in the presence of assistant chief Kiely. Kiely asked him where he was about eleven o'clock, the time the robbery occurred, and he stated he was in a poolroom on Sixth street about eleven o'clock, playing pool with two other men—was there from about ten to twelve o'clock, and then came to Tenth and Walnut where he met a woman he calls his wife, Lizzie Mitchell, and went from there to the house 113 South Tenth street and remained all night. That is all the statement he made."

It is clear that the defendant was under arrest when Cremin, the officer, says he charged him with being implicated in the hold-up of Mosier. This was said merely to advise him of the cause of his arrest. Did the circumstances call upon him for a statement at that time? We have seen they did not as he was under arrest and on his way to the hold-over station. When he reached the station and was asked to state his whereabouts on the night of the robbery, he did so. And yet when the assistant circuit attorney came to argue the case, he assumes that the silence of the defendant "when charged with the crime and *identified* as the robber" was evidence of his guilt, because "he did not utter a syllable." In fairness to the assistant circuit attorney, we do not think it fair to say that his language referred to the indictment and defendant's identification on the trial. If it did, it goes without saying it would have constituted gross error, but we think he clearly referred to the time of his arrest and identification by Mosier in the hold-over. Clearly, there was no occasion for him to deny his identification by Mosier, as there is no evidence tending to show he knew he had been so identified by Mosier at that time, and it

was not legitimate argument for the assistant circuit attorney to insist that because he did not say anything at the time the officer arrested him and told him he arrested him because he was implicated in the hold-up of Mosier, it was proof of his guilt; and when defendant's counsel objected to such statement and argument, the court approved it, saying it was not improper argument. Had the court instructed the jury in writing that in making up their verdict they might take into consideration the silence of defendant while under arrest when charged by the officer with being implicated in the robbery, can there be any doubt, under our decisions and the circumstances, that such an instruction would have constituted error? We think most clearly not. And was it less prejudicial for the court to sanction such a statement, a virtual statement that such was the law, when made orally and the court called upon to rebuke. it? In our opinion it was highly prejudicial. The jury could have drawn no other conclusion from this colloquy between the counsel for defendant and the court than that it was the defendant's duty to have denied after his arrest all complicity in the crime, and, as he "uttered not a syllable," it was an inference that his guilt might be fairly drawn from his silence.

The Attorney-General in his brief meets this point by saying, "It is well-established law that the silence of a person, when charged with a crime, is a circumstance to be considered. When one is charged with a crime and fails to deny the charge, an unfavorable presumption against him arises. The law presumes that innocence will then assert itself, and when one remains mute, when thus charged, it is a circumstance to be considered by the jury, and the industrious prosecutor will seldom fail to comment on the fact."

That this is the doctrine before the defendant is under arrest and when the charge is not made in a judicial proceeding, may be conceded, and such is the ruling of this court in State v. Walker, 78 Mo. 380, and

in other jurisdictions, but in the cases already reviewed this court has emphatically held that no such duty devolves upon the defendant after his arrest and when the charge is made in a judicial proceeding. [State v. Young, 99 Mo. 666; State v. Mullins, 101 Mo. 1. c. 517.]

In State v. Reed, 71 Mo. 200, the defendant was charged with larceny. The only evidence tending to show his guilt was the fact that, soon after the hog was missed by the owner, it was found in defendant's possession. He claimed to have purchased it from some persons who had stopped at his house with a drove of hogs, and his evidence that he had so purchased it was corroborated by several witnesses. The court gave no instruction on the presumption of guilt arising from recent possession of stolen property, but the prosecuting attorney undertook to supply this omission of the court, over the objection of the defendant. This court held that the circuit court, having abdicated its duty, should have forbidden the prosecuting attorney from making any statement of the law calculated to mislead the jury, and reversed the judgment on that ground alone. We can see no difference in principle between that case and this. If the circuit attorney was of opinion that the silence of defendant, after his arrest, when charged with this robbery, was a circumstance against him, or raised a presumption of guilt, he should have prayed an instruction to that effect and if the court agreed with him, it should have so instructed. If it had, it would have been error, but it was no less error to permit the prosecuting attorney to argue that such was the effect of defendant's silence, with the approval of the court against the objection and over the protest of defendant timely made. It is the duty of the court to instruct on the law in writing. [State v. Shipley, 174 Mo. 512.]

The defendant has been sentenced to ten years' imprisonment on this charge upon the identification of one witness only, who had never seen him before that

night.  He may be guilty, but we think reversible error was committed in permitting the assistant circuit attorney to argue that he was guilty because, after his arrest, he did not protest his innocence.  We think, in view of all the testimony, the ruling was exceedingly hurtful.  For this error, the judgment is reversed and the cause remanded for a new trial.

All concur.