## THE STATE v. ETHRIDGE, Appellant.

### Division Two, May 16, 1905.

1. **ASSAULT: Previous Controversy: Defendant Not Party: Evidence: Ruling of Court.** In a prosecution for felonious assault, the court, in admitting evidence of a previous controversy on the same day between the prosecuting witness and a brother of defendant, said, "She (prosecuting witness) may tell they had trouble there before for the purpose of showing there had been preparation, and for no other reason." *Held,* that, as the testimony subsequently developed that defendant took no part in the previous controversy between his brother and the prosecuting witness, this evidence was inadmissible, and should have been excluded on motion. *Held,* also, that the use of the word "preparation," in the ruling of the court, while unfortunate, did not constitute reversible error.

2. ————: **Prejudicial Statement of Third Party: Defendant Under Arrest.** The admission of a statement of a member of defendant's family, made at the home of defendant after he had been arrested by the constable, that "she tried to keep the boys out of this trouble, and didn't care how much trouble they saw over it," said statement being directed not to the defendant but to the constable, was highly prejudicial, and constituted reversible error.

State v. Ethridge.

Appeal from Barry Circuit Court.—*Hon. H. C. Pepper.* Judge.

REVERSED AND REMANDED.

*Davis & Steele* for appellant.

(1) Trial courts should abstain from comments upon the evidence in presence of the jury. State v. Findley, 101 Mo. 224; Hackmann v. Gutweiler, 66 Mo. App. 244. (2) "On the trial of one charged with felonious assault it is error to admit evidence of a previous difficulty between the party alleged to have been assaulted and the brother of defendant, where the defendant was in no way connected with it." State v. Clayton, 100 Mo. 516; State v. Parker, 96 Mo. 382; State v. Tabor, 95 Mo. 585; State v. Jackson, 95 Mo. 623. (3) Defendant being under arrest at the time, was not required to answer, and his silence is no evidence against him in such case. Wharton's Crim. Evidence (9 Ed.), sec. 680; State v. Young, 99 Mo. 647; State v. Mullins, 101 Mo. 514; State v. Howard, 102 Mo. 148; State v. Murray, 126 Mo. 611.

*Herbert S. Hadley,* Attorney-General, and *Rush C. Lake,* Assistant Attorney-General, for the State.

(1) There was nothing in the remark of the judge to prejudice defendant's case. Then, too, the question of preparation for trouble has been reviewed by this court in the cases of State v. Lewis, 181 Mo. 235; State v. Rudolph, 187 Mo. 67. (2) The cases cited under point 2 of appellant's brief have no application, for the reason that the testimony of Mrs. Wilson shows that both defendant and his brother, Ella Ethridge, were present on the occasion of the first difficulty.

GANTT, J.—This prosecution was commenced in the Barry County Circuit Court by information filed by the prosecuting attorney, wherein the defendant and his brother, Ella Ethridge, were charged with a felonious assault upon Mrs. M. E. Wilson, with a stick of sawed timber, three feet long, two inches wide and two inches thick, with intent to kill said Mrs. M. E. Wilson. The information is duly verified. The defendant was found guilty and his punishment assessed at imprisonment in the penitentiary for two years. After ineffectual motions for a new trial and in arrest of judgment, he appealed to this court.

The prosecutrix and the defendant lived on farms in the same neighborhood on February 12, 1903. It appears that on that day the defendant and his brother Ella were hauling wood or rails from a forty-acre tract, owned by Ella Ethridge. The defendant and his brother lived west of Wilson's, and on the day mentioned had been to this forty-acre tract, and about four or five o'clock of that day were returning to their home with a load of rails. The Wilson farm is on the north side of the road and the yard fence came down a portion of the way into the road, as the defendant's witnesses claim it had been established and ordered opened. It appears that Wilson, the husband of the prosecutrix, in order to prevent a mudhole in front of his residence, had placed some posts out into the lines of the road. When the defendant and his brother came in front of the Wilson yard, the defendant, who was walking in front of the team which his brother was driving, began throwing the posts out of the road so that the team with the load of wood or rails could pass through. The prosecutrix and her children testified that the first notice she had that the Ethridge boys were there was when she was notified by her daughter, and that she then came out on the porch and called to the defendant to let the

posts alone, that the defendant failed to stop and she went out into the road and continued to command him to let the posts alone; that he did not say anything, and she went to the gate and just as she opened the gate the defendant jerked a piece of timber off of one of the posts, a two-by-four about four feet long, and started towards her, and she warned him to stop, but he did not, and she told him the second time, and then she stooped down and picked up a piece of plank about three feet long, and as she saw he was going to hit her she threw up the plank to ward off his blow, and he hit the plank and hit her on the head and knocked her down. She then testified that he then hit her with his fists in the face, when her son Joseph snapped a shotgun at the defendant but it missed fire and then the defendant desisted in striking her; that when he turned her loose she saw that he had a pistol, and told her that if she did not go into the house he would blow her brains out.

The fact that this row of posts in the road at this place had been a subject of conversation prior to this time appears from the defendant's examination. He says that while eating breakfast that morning, his brother remarked to him that they would go to work on the place, the forty-acre tract, and said, ''I want to bring back a load of rails,'' and remarked that the roads were awful and did not know whether we could get through, and he (defendant) said that he (Wilson) had no right to put the posts in the road there, that it was a public road and that he would throw them out, and the brother remarked, ''I do not know as I would do it,'' to which defendant replied, ''I will throw them out, and if he comes out there we will have trouble; I might have said I would give him a thumping.''

There was much evidence pro and con as to whether the place where the posts were was a part of a public road, and whether Wilson's yard fence was on the line or in the road, and it seems to have been the theory

of the defense that the posts were in the public road, and defendant had a right to keep it free from obstruction and open to travel, but while he was removing the posts, Mrs. Wilson came out and made an attack upon him with a club, and that in the skirmish Mrs. Wilson struck the post and fell towards him. He denied striking her. Miss Cora Wilson, a daughter of the prosecutrix, corroborated her mother as to the fact that the defendant was the aggressor and knocked her mother down and was hitting her when her brother Joseph got the shot-gun and snapped it at him. Joseph Wilson also corroborated his sister as to the assault by the defendant on his mother.

Mr. J. T. Robbins, the constable of that township at the time, testified that he made the arrest of the defendant and his brother, and over the objection of the defendant he was permitted to detail a statement of Mrs. Ethridge, made in the presence of the defendant after his arrest, that she had tried to keep the boys out of it and that they made it up at the table to go down to Carrick Wilson's to move them posts or whip hell out of Carrick Wilson. And that the defendant said he was mad and aimed to do it. There was evidence tending to show that Mr. Wilson's yard fence was some eight or nine feet in the road as the road was ordered to be laid out and established, and a number of witnesses testified that the posts placed there by Mr. Wilson were in the public road and that Mr. Wilson had told sundry parties that a certain row of walnut trees inside of his fence was at the edge of the right of way, and when he came to repair his fence he would have to move it back to those trees. There was evidence tending to impeach Joseph Wilson as to a denial of a statement made by him that his mother was the aggressor and struck at the defendant with a stick. Ella Ethridge testified and corroborated his brother to the effect that Mrs. Wilson ran out and picked up a stick and assaulted his brother, and his brother simply warded off the blow

and in the struggle both Mrs. Wilson and his brother fell to the ground, whereupon Joseph Wilson went up and snapped a shot-gun at him.

The defendant testified in his own behalf, that. he was throwing the posts out and after he had thrown out two or three, Mrs. Wilson came running through the yard gate, and just as she turned she picked up a club with both hands and came running towards him with it and she got pretty close and said, ''You little one eyed son of a b—, I will bust your head,'' and he stooped and picked up the post and started to throw it back and just as she raised the club, I raised the post and she struck at me and struck the post and I turned the post loose and grabbed a stick, and I put my hand under her shoulder and she stepped over some of these posts, and when I jerked her she fell towards me; she still had hold of me and pulled me right down on top of her; she fell on the left side of her face, and just as she and I fell I heard a gun snap and Joe Wilson had a double-barrel shot-gun over the fence right in my face, and as I raised up he pulled the trigger and started to pull the hammer again, and I jerked out my pistol and told him to go in the house or I would blow his brains out. The defendant unequivocally says that he never struck her with the club or ever hit her in the face.

The instructions will be noted in the course of the opinion.

I. The first assignment of error is based upon the fact that the court, in admitting evidence of a previous controversy on the same day between Ella Ethridge and Mrs. Wilson, said, ''She may tell *they* had trouble there before, for the purpose of showing there had been *preparation,* and for no other reason.'' We think, in the light of the testimony subsequently developed, this evidence was inadmissible and should have been excluded on the motion to strike it out after it appeared, as it did, that defendant took no part whatever in the

previous dispute between his brother, Ella, and Mrs. Wilson, but sat in the wagon and said nothing at all. The word ''preparation'' in the ruling of the court was unfortunate, but we are not satisfied the judgment should be reversed on that ground.

II. A much more serious contention is that the court erroneously permitted the constable, Mr. Robbins, to testify to statements made to him by Mrs. Ethridge on the morning after the difficulty at the home of the defendant and after he had arrested the defendant and his brother. The statement of Mrs. Ethridge was not binding on defendant, and the mere fact that it was made in his presence to the constable did not call for a denial on his part, as he was then under arrest. The officer had not questioned the defendant as to his participation in the difficulty of the day before, and Mrs. Ethridge was not directing her remarks to the defendant. We have recently had occasion to review the decisions of this court on this point in State v. Swisher, 186 Mo. l. c. 14 and 15. In State v. Young, 99 Mo. 666, when the defendant was under arrest, it appeared that one Craft said to the marshal who had the prisoner, ''You have the right man, you don't have to go any farther to get him.'' This statement of Craft was held incompetent and reversible error for two reasons: because the defendant was under arrest, and because made by a stranger in his presence and not to him. [State v. Murray, 126 Mo. 611; State v. Foley, 144 Mo. l. c. 618; State v. Hale, 156 Mo. l. c. 108.]

Evidently the court based its ruling in admitting the statements of Mrs. Ethridge on the ground that at sometime that morning the defendant said he was mad and aimed to do it, but the constable says there were other things that caused defendant to use this expression. He states positively that defendant ''didn't say anything directly'' in regard to Mrs. Ethridge's statement that ''she tried to keep the boys out of this trou-

ble, and didn't care how much trouble they saw over it."
He further says that when Mrs. Ethridge made this
statement it was to him, the constable.

We do not think the statement of Mrs. Ethridge
was such as to call for any reply by him, nor, in view
of the constable's evidence as a whole, that what he
said about being mad was by way of reply to what Mrs.
Ethridge said. That the statement itself was very
damaging admits of no discussion. It was highly preju-
dicial, and evidently tended to aggravate his offense in
the mind of the jury. For this error the judgment must
be reversed. [State v. Swisher, 186 Mo. l. c. 14, 15.]

III. We do not think the objection to the first in-
struction is well taken. It does not assume the stick
was a dangerous and deadly weapon. The form might
be improved, but it was clear enough as it was.

IV. The criticism of instruction No. 5 we think
is without substantial merit, and so likewise is the ob-
jection to the information. For the error noted, the
judgment is reversed and the cause remanded.

*Fox, J.,* concurs; *Burgess, P. J.,* absent.