**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Jerome Benjamin BUTLER, Defendant-Appellant.**

**No. 35696.**

Missouri Court of Appeals,
St. Louis District,
Division 1.

July 30, 1974.

Heneghan & Roberts, Kemper R. Coffelt, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Allan D. Seidel, Asst. Atty. Gen., Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

From a conviction of second degree murder and a sentence by the court to life

imprisonment under the Second Offender Act, defendant appeals. Because of improper comment by the assistant circuit attorney, we reverse and remand for new trial.

On appeal, the defendant does not question the sufficiency of the evidence. The brutal facts of the killing briefly stated were that on the evening of December 4, 1970, the defendant entered the Wedge Liquor Store, cursed the deceased who was standing some distance from the door, ran over to him, threw one arm around his head, and with a pistol held in the other hand fired one shot into his brain. The employee at the liquor store testified that to his knowledge, the deceased was not armed at the time. Defendant testified in his own behalf claiming that the shooting was in self-defense. He stated that he had been involved in a quarrel with the deceased and the deceased's brother at a pool hall prior to the shooting. The two brothers, together with others, started chasing the defendant, but the defendant managed to escape. Allegedly he then went to the Wedge Liquor Store for the purpose of calling a taxicab and when he entered the store, defendant related that he saw the deceased reach for and pull a gun. Defendant testified that he then pulled his own gun and shot the deceased.

Defendant's primary contention on appeal concerns itself with a violation of his constitutional rights against self-incrimination as secured by the Fifth Amendment of the Constitution of the United States; Article I, § 19 of the Missouri Constitution, V.A.M.S.; and by Rule 26.08, V.A.M.R. (same as § 546.270, RSMo 1969, V.A.M.S.).

The first indication that this problem might arise occurred during the cross-examination of the defendant by the prosecutor during the trial. Defendant had admitted on this cross-examination that after the killing on December 4, 1970, he had left town and did not return until June 2, 1971 when he was arrested. He explained his flight by stating that there were several people with guns who were trying to shoot him, and he left for his own safety. The prosecutor then posed this question: "I presume this story you're telling the jury today you told them [the police] that in June, is that correct?" The answer was: "No." His attorney then objected on the grounds that his client had no duty to tell the police officers anything; that he had a right to remain silent; and that the prosecutor was trying to infer that because of his silence he was guilty. The objection was sustained by the court.

Thereafter, during the first portion of the state's closing argument, the assistant circuit attorney stated: "And then you had the testimony of the defendant. The defendant tells you, 'I was frightened, I was afraid.' Well, the Court gives you some standards to use in testing what Jerome Butler told you. The standards used in deciding whether or not what you heard was the truth or simply a belated excuse brought eighteen months later to the jury told—story told for the first time—." Defendant's attorney immediately objected, raising as before the right of his client to remain silent. The objection was overruled by the court, and the assistant circuit attorney, continuing, stated: "Believe me, I am not arguing that he had to tell anybody. I'm simply saying that he didn't. He kept this his little secret until he —." To this defendant's attorney again objected, stating that this was beyond the scope of what a prosecutor was entitled to do, and furthermore objected to the use of the word "secret". The court sustained the objection as to the use of the word "secret".

The above-quoted closing argument by the state amounts to a comment upon defendant's failure to disclose his theory of self-defense to anyone but his attorney prior to trial. By commenting upon defendant's silence following his arrest, defendant contends that the state has committed reversible error. This, of course, projects us into the area of the law where-

in the silence of an accused person may be admitted to show guilt under certain circumstances.

 The silence of an accused when not under arrest, and in circumstances such that only a guilty person would remain silent, is admissible as being in the nature of an admission against interest. State v. Phelps, 384 S.W.2d 616, 621[8] (Mo.1964); State v. Rush, 286 S.W.2d 767, 771[3] (Mo.1956). This is consistent with the general rule that acts and conduct of an accused after commission of an alleged crime are admissible if they are relevant and tend to show consciousness of guilt, or desire or disposition to conceal the crime. State v. Ruckman, 222 S.W.2d 74, 75[4] (Mo.1949). Therefore, it was entirely proper for the prosecuting attorney here to elicit from defendant on cross-examination the fact that defendant had fled the city after the occurrence of the alleged crime. Unexplained flight of an accused person has been held in this state to raise a presumption of his guilt. State v. Sparks, 195 S.W. 1031, 1032[2] (Mo.1917). But our courts have consistently held that the prosecuting attorney is not entitled to refer to an accused's failure or refusal to make any statement to the police while an arrest is being made or after arrest. State v. Elmore, 467 S.W.2d 915, 916[2] (Mo.1971). The privilege against self-incrimination embraces not only the right to remain silent, but also the right not to have that silence give rise to an inference of guilt. State v. Elmore, *supra* at 917[3]. As stated in *Elmore* at p. 917: "It is not consistent with defendant's right under the constitution and the statutes to remain silent if it is to be done on the penalty of his silence being used against him at trial, which would be the case if a prosecutor could cross-examine or comment on defendant's failure to volunteer information while he was awaiting trial."

State v. Conway, 348 Mo. 580, 154 S.W. 2d 128, 134[15] (1941), is a case closely analogous to the instant situation. There the court held that it was reversible error to permit the prosecutor to elicit on cross-examination of the defendant that she had not testified at the preliminary hearing and to comment on such in closing argument. In ruling that the defendant had not waived her constitutional right against self-incrimination by testifying in her own behalf, the court at p. 134 discussed that right in the following language: " * * * since it is a right and a privilege granted the citizen, he should be permitted to exercise it with complete freedom and not at the peril of being impeached by it in the event that he should ever attempt to assert his innocence. No suspicion or incrimination should follow the assertion of a constitutionally given right."

Again, in Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) defendant's conviction was reversed for the reason that the prosecuting attorney elicited from the defendant on cross-examination over objection that defendant had invoked his Fifth Amendment privilege before a grand jury. After determining that the statements made by defendant before the grand jury were not inconsistent with the statements given by him in his own defense, and that he therefore had not waived his right against self-incrimination by testifying in his own behalf, the court noted at pp. 423, 424, 77 S.Ct. p. 984: "We are not unmindful that the question whether a prior statement is sufficiently inconsistent to be allowed to go to the jury on the question of credibility is usually within the discretion of the trial judge. But where such evidentiary matter has grave constitutional overtones, as it does here, we feel justified in exercising this Court's supervisory control to pass on such a question. This is particularly so because in this case the dangers of impermissible use of this evidence far outweighed whatever advantage the Government might have derived from it if properly used. If the jury here followed the judge's instructions, namely, that the plea of the Fifth Amendment was relevant only to credibility, then the weight to be given this evidence was

less than negligible, since, as we have outlined above, there was no true inconsistency involved; it would therefore hardly have affected the Government's case seriously to exclude the matter completely. On the other hand, the danger that the jury made impermissible use of the testimony by implicitly equating the plea of the Fifth Amendment with guilt is, in light of contemporary history, far from negligible."

*Elmore, Conway* and *Grunewald* clearly refute the state's assertion that the prosecutor's remarks concerning defendant's silence were proper for the reason that they were aimed at defendant's credibility as a witness and not at his guilt.

The question remains whether the comments made by the prosecuting attorney constituted reversible error. Generally, the propriety of statements made in oral argument is largely within the discretion of the trial court, and a reversal on such ground occurs only on a clear showing that the court abused its discretion to the prejudice of defendant. State v. Turnbough, 497 S.W.2d 856, 860[15] (Mo.App.1973); State v. Jewell, 473 S.W.2d 734, 741[8] (Mo. 1971). But as previously noted in State v. Conway, *supra*, defendant's conviction was reversed and the cause remanded when the prosecutor elicited from defendant on cross-examination and commented in closing argument on the fact that defendant did not testify at the preliminary hearing. In so holding, the court was concerned with the possibility of the jury considering defendant's assertion of her Fifth Amendment privilege in its deliberations of her guilt or innocence. Similarly, State v. Phelps, *supra*, 384 S.W.2d 616, 621[8] (Mo.1964) reversed defendant's conviction of robbery in the first degree by means of a dangerous and deadly weapon, when the court decided testimony of a police officer that defendant did not respond to questions while under arrest may well have been considered by the jury in its deliberations. The United States Supreme Court in Grunewald v. United States, *supra*, 353 U.S. at 424, 77 S.Ct. 963 was concerned with the

same danger of impermissible jury use. State v. Swisher, 186 Mo. 1, 84 S.W. 911 (1905) is yet another decision analogous to the instant situation. In closing argument the objectionable remarks of the prosecutor were as follows: " 'There is every element in the case proven directly and positively, and the defendant, when charged with the crime and identified as the robber, did not utter a syllable.' " In holding such comment reversible error, the court at p. 913 stated: "In our opinion, it was highly prejudicial. The jury could have drawn no other conclusion from this colloquy between the counsel for defendant and the court than that it was the defendant's duty to have denied, after his arrest, all complicity in the crime, and, as he 'uttered not a syllable,' it was an inference that his guilt might be fairly drawn from his silence."

■ The remarks here in question were not as pointed as those expressed in *Swisher*, but the fact remains that they did refer to that time while defendant was under arrest, and in effect, inferred defendant's guilt because of his failure to then protest his innocence. This latter conclusion is best evidenced by the prosecutor's apparent attempt to stress to the jury the fact that defendant failed to make an exculpatory statement to the authorities: "Believe me, I am not arguing that he had to tell anybody. I'm simply saying that he didn't. He kept this his little secret until he ——."

Although it is impossible to weigh the prejudicial effect on defendant's rights by these remarks, it would appear that the jury's attention was drawn to the fact that defendant had failed to assert his claim of self-defense after his arrest. Because such may well have been considered by the jury in determining defendant's guilt of the crime for which he was being tried, the judgment must be reversed and the cause remanded.

Both instructions of which defendant complains follow forms now incorporated in MAI–CR. His contention of error in

failing to grant a new trial because of newly discovered evidence, while lacking merit on appeal, will be solved by our resolution of this case.

The judgment is reversed and the case remanded for a new trial.

DOWD, C. J. and KELLY, J., concur.