STATE of Missouri, Respondent,

v.

Martsay L. BOLDER, Appellant.

No. KCD27811.

Missouri Court of Appeals, Kansas City District.

Feb. 9, 1976.

Motion for Rehearing and/or Transfer Denied March 3, 1976.

Application to Transfer Denied April 14, 1976.

David Wm. Kierst, Jr., Donald L. Cain, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

The indictment in this case charged defendant with first degree murder of Louis Donovan. The jury found him guilty and fixed his punishment at life imprisonment. Defendant's sole point on appeal is his contention that the admission of certain evidence violated his constitutional rights of due process and confrontation of witnesses, in that the evidence in question consisted of hearsay. Only so much of the evidence will be mentioned as bears on this one limited issue.

At about 9:00 p. m. on Thanksgiving evening of 1973, Donovan was in his apartment having a Thanksgiving day dinner with his family and friends, when footsteps were heard in the hall. These footsteps were heard to go up the stairway and then come back down. There was a knock on the door, Donovan went to answer it and opened it about a foot. No one in the apartment could see who was at the door. Someone asked whether Rosie was there and Donovan answered "No." Some more things were said, and then Donovan was heard to say, "Oh, no," and was observed to try to close the door against some resistance. A shot was fired, Donovan turned and said,

"They got me, right here," and fell over the coffee table. He died from massive hemorrhage into both chest cavities caused by the gunshot wound he sustained.

On that same night, a group of young people met in defendant's house. This group consisted of defendant, Clinton Handley, Willie Dilworth, Tanzaneeka Walker, Kathleen Hayes and Christine Hayes. While they were gathered together, defendant had a gun and he and Handley acted out a pantomime. Defendant was over by the door and acted "like he was kicking a door and acting like he was pulling a gun from his side." Handley had a cigarette in his hand and flipped it at one of the girls and "they all started laughing." In connection with this pantomime, some statements by the young men were also made. Christine Hayes testified that it was at this time that defendant stated, "If the man hadn't flipped a cigarette in my face, I wouldn't have shot him." Defendant does not raise any question on this appeal concerning that admission attributed to him. His only complaint refers to other statements attributed to Handley and as having been made on this occasion.

The comments by Handley were testified to by Walker and Kathleen Hayes. Walker testified that she heard Handley tell defendant that if it had been him that the old man had flipped a cigarette at, he would have done his best to blow his head off; to which defendant said "Yeah, man" and started laughing. Kathleen Hayes testified that as part of this episode Handley said, "Martsay just let the dude have it." Defendant seeks to brand the admission of this testimony by Walker and Kathleen Hayes as an invasion of his constitutional rights.

The constitutional claim adds nothing nor does it in any way change the real nature of the legal issue. That issue is whether the testimony in question should have been excluded on the ground that Handley was not present in court and subject to cross-examination. If so, the exclusion would be required because of the hearsay rule, regard-

less of constitutional rights. On the other hand, if the testimony is admissible under any recognized exception to the hearsay rule, then "neither the objection that it is hearsay nor the objection that the accused is denied the right of confrontation and cross-examination is valid." *State v. Spica,* 389 S.W.2d 35, 46 (Mo. 1965).

Addressing therefore the matter of hearsay, the issue is controlled here by the exception permitting hearsay evidence of extrajudicial admissions. The statements in question by Handley were made in defendant's presence and in the context of joint play-acting which was incriminating to the extent of indicating that defendant had perpetrated a shooting of someone in a scuffle near a door. If Handley's statements further implicating defendant were not true, defendant would normally have denied them, and his silence can be considered an implied admission. As stated in 80 A.L.R. 1235, 1236: ". . . crystallization of the experience of men shows it to be contrary to their nature and habits to permit statements, tending to connect them with actions for which they may suffer punishment, to be made in their presence without objection or denial by them, unless they are repressed by the fact that the statement is true. Consequently, silence under accusation is some evidence from which the jury may infer that the accused acquiesced in the statement and admitted its truth . . ." Defendant's mere silence would have made Handley's statements admissible. *State v. Thomas,* 440 S.W.2d 467 (Mo.1969). See also: *State v. Butler,* 512 S.W.2d 466 (Mo.App.1974); *State v. Hornbeck,* 492 S.W.2d 802 (Mo. 1973). To his bare silence must here be added the further facts that the two were performing a joint pantomime, that defendant affirmatively answered "Yeah, man" to one of Handley's statements, and that defendant himself made a direct, express admission that he had shot a man.

Affirmed.

All concur.