THE STATE v. WALKER, *Plaintiff in Error.*

1.  **Murder**: EVIDENCE, RES GESTAE. The moment after a shot was fired resulting in death, defendant's right hand fell to his side and he struck out with his left at the deceased, when a bystander exclaimed "Don't strike him, for you have shot him now." *Held,* that such exclamation was admissible in evidence as part of the *res gestae ;* that it was called out by, and was illustrative of, the affray while still in progress.

2.  ———: EVIDENCE. The failure to repel or deny a direct charge of crime is competent as presumptive evidence of guilt.

3.  ———: RES GESTAE. Upon a trial for homicide, the statement of another, when arrested for the crime, that he did not shoot the deceased, and the statements of others that it was the defendant who shot him, are not admissible in evidence as part of the *res gestae,* when not made during the affray.

*Error to Stoddard Circuit Court.*—HON. R. P. OWEN, Judge.

REVERSED.

There was testimony that on the evening of the 4th day of November, 1880, the deceased with James and Henry

Layton drove up to the drug store of P. G. Wilson in Bloomfield, where were assembled about eight or ten persons; that deceased and James Layton dismounted and went into the store, when deceased hollowed "Hurrah for Garfield," and some one hollowed "Hurrah for Hancock;" that deceased then said "I am a Garfield man, but I don't want this noise;" that defendant replied "I will hollow when and where I please;" that deceased said "I am here to keep order, and you will keep still or get out;" that defendant then said "I can get out of your d—d house, come out and I'll settle with you;" that deceased said "I do not want a fuss;" that defendant again hollowed "Hurrah for Garfield;" that deceased then came from behind the counter and said "Boys, help me to put these men out;" that defendant and James Layton were then forced out of the house; that shortly afterward a flash of a pistol was seen in the direction of the defendant, and deceased stepped back and said, "Boys, I'm shot;" that defendant then made a step or two toward deceased, and struck at him with his left hand, his right hand being dropped down and behind him, and said "Show me the d—n s— of a b— who put me out of the house;" that a bystander, named Cole, exclaimed "Don't strike him, for you have shot him now;" that Stephen Elliott was in an office, across the street from the drug store, when the shot was fired; that he started immediately to go to the place of the shooting and met a man coming from the drug store, whom he caught and held down; that this man said "Please let me go, I did not shoot him;" that about this time a wagon drove off; that Elliott heard voices saying "Walker shot the man," that he then let loose the man he had, and tried to catch the team; that the night was dark and rainy.

The instructions following were asked and given on behalf of the State:

1. The court instructs the jury that if they believe from the evidence that the defendant, Alfred Walker, did in Stoddard county and State of Missouri, on or about No-

vember, 1880, willfully, deliberately, premeditatedly and with malice aforethought shoot and kill one Robert White in Stoddard county, Missouri, as charged in the indictment, they ought to find him guilty of murder in the first degree. Willfully, as here used, means intentionally and not accidentally. Deliberately, as used in this instruction, means done in a cool state of the blood, that is, not in a heat of passion caused by a lawful provocation. Premeditatedly means thought of beforehand, any length of time however short, even for a moment, length of time not being material. Malice signifies a condition of mind, an intention to kill, or do some great bodily harm to another without just cause or excuse. Aforethought means thought of beforehand for any length of time however short.

2. One who uses a pistol or other deadly weapon by which death is produced with a manifest design so to use it, with sufficient time to deliberate and fully form a conscious purpose to kill, without having at the time of killing reasonable cause to apprehend immediate danger of personal violence to himself, unless he so killed his enemy, is guilty of murder in the first degree. And if the jury believe from the evidence that defendant, Albert Walker, so shot and killed the deceased, willfully, deliberately, premeditatedly and of his malice aforethought, as those terms are defined in the first instruction, then they should find him guilty of murder in the first degree. And if the defendant had time to think before he so shot and killed the deceased and did intend for a moment, as well as for an hour or a day, then the killing is willful, deliberate and premeditated, and when human life is so taken with a pistol or other deadly weapon likely to produce death, then the malice requisite to constitute such killing murder will be presumed, unless the defendant is shown to have had reasonable cause, at the time he so shot and killed the deceased, to apprehend immediate danger of great personal injury from the deceased, and that there was then immediate danger of such design being accomplished.

3. If the defendant shot and killed the deceased with a pistol, as defined by the first instruction, then there is no murder in the second degree in the case, but the offense, if proven, would be murder in the first degree, and the jury should so find.

4. Murder in the second degree is the wrongful killing of a human being, with premeditation and malice aforethought, but without deliberation. It is where the intent to kill is formed and executed in a heat of passion, executed the instant it is conceived, or before there has been time for the passion to subside; and if the jury are satisfied that the defendant did, with malice aforethought, in the manner and by the means charged in the indictment, willfully kill the deceased, Robert White, and the same was done without deliberation, then you ought to find the defendant guilty of murder in the second degree, and assess his punishment in the penitentiary for any period of time not less than ten years.

The instructions following were asked and given on behalf of the defendant:

1. Before the jury can find the defendant guilty of murder in the first degree, the State must prove beyond a reasonable doubt that the defendant shot and killed the deceased, Robert White, and that he did the killing deliberately, premeditatedly and of his malice aforethought; and unless the guilt of the accused has been so proven, there is no murder in the first degree, and the jury should so find.

2. Before the jury can find the defendant guilty of murder in the second degree, the State must prove beyond a reasonable doubt that the defendant shot and killed the deceased, and that the same was done with malice aforethought and premeditation.

4. Evidence is direct and circumstantial. Direct evidence is that which directly proves or disproves, if believed, the fact in issue. Circumstantial evidence is where the evidence tends to prove or disprove some collateral fact

which, if found to be true, tends more or less to prove or disprove the controverted fact. And where it is attempted to establish the guilt of an accused person by circumstantial evidence only, the circumstances indicating guilt should not only be consistent with his guilt, but should be inconsistent with any other reasonable conclusion, and unless the jury find the circumstances establishing the guilt of the defendant to have been so proven, they will acquit.

5. The jury are the sole judges of the weight and value of the evidence, and, in deciding what credit is to be given to the statements of any person who has testified upon the trial, it will be proper to consider the intelligence of the witness, the interest he may feel, if any, the opportunities for observing and knowing the facts about which he speaks, the probabilities or improbabilities of his statements, with any other circumstance calculated to add to or detract from the credit due his testimony; and if satisfied that any witness has willfully testified falsely to any material fact, the jury will be at liberty to disregard the whole of the evidence of such witness or witnesses.

6. If the jury have a reasonable doubt of defendant's guilt, they ought to acquit, but a doubt to justify an acquittal on that ground should be a reasonable and substantial one arising out of the evidence, and not a mere possibility of his innocence.

7. To enable the State to a conviction in this cause, all the material facts must be proven substantially as charged in the indictment; and unless the jury find from the evidence that the prosecution has so proven the facts in this case, they ought to acquit.

8. Every person is presumed to be innocent, until his guilt is established by competent evidence.

The following instruction asked on behalf of defendant, was refused by the court:

3. The court instructs the jury that the defendant denies the killing of the deceased, but that although the jury might believe from the evidence that defendant shot

and killed deceased, yet if they further believe that at the time of the killing, the defendant had reasonable grounds to believe that the deceased was about to take his life, or inflict upon him some serious personal injury, and that such danger was imminent, the defendant had the right to defend himself even to taking the life of deceased, although it might turn out afterward that such danger was only apparent to defendant and not real, and the jury will find the defendant not guilty. And in arriving at the fact as to whether defendant had reasonable grounds to apprehend such danger, the jury should take into consideration the facts that defendant was in a public house, that he was ordered away and expelled from the house by the deceased, and that the deceased then and there armed himself with a pistol.

The court, upon its own motion, gave the following instruction: The law of self-defense is the law of necessity, to which a party may have recourse under certain circumstances to prevent any reasonably apprehended great personal injury, which he may have reasonable grounds to believe is about to fall upon him; and if the jury believe that defendant had reasonable cause to apprehend a design on the part of deceased to kill him or to do him some great personal injury, and that there was reasonable cause to apprehend immediate danger of such design being carried out, and he shot and killed the deceased to prevent the accomplishment of such apprehended design, then the killing is justified upon the law of self-defense, and you should acquit. It is not necessary to this defense that the danger should have been actual or real, or that danger should have been impending and immediately about to fall, but if you believe that defendant had reasonable cause to believe these facts, and he shot under such circumstances as he believed to prevent such expected injury, then you should acquit; but before you acquit on the ground of self-defense, you ought to believe that defendant's cause of apprehension was reasonable. And whether the facts constituting such

25—78

reasonable cause have been established before you by the evidence you are to determine; and unless the facts constituting such reasonable cause have been established before you by the evidence in this cause, you cannot acquit on the ground of self-defense.

*S. M. Chapman* for plaintiff in error.

*D. H. McIntyre,* Attorney General, for the State.

SHERWOOD, J.—Indictment for murder in the first degree; trial had and verdict for the second degree. The evidence was largely circumstantial, no witness testifying positively that the defendant fired the fatal shot, though there was much in the testimony pointing to him as the perpetrator of the murderous deed. There is great conflict of authority on the subject of what constitutes the *res gestae.* We feel satisfied that the remark or exclamation of Cole to Walker the moment after the shot was fired, and while the difficulty was still in progress, was thus admissible as illustrative of the act which generated or gave rise to the exclamatory remark of Cole.

*1. MURDER: evidence res gestae.*

Mr. Wharton, discussing this point, says: " The *res gestae* may, therefore, be defined as those circumstances which are the undesigned incident of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary

individual wariness seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act. They are admissible, though hearsay, because in such cases, from the nature of things, it is the act that creates the hearsay, not the hearsay the act." 1 Wharton Ev., § 259, and cases cited.

It will be seen from the above quotation that in the view of some of the authorities at least, the exclamations ·made at the time of the occurrence, or immediately thereafter, and immediately and naturally connected therewith, form part of the *res gestae*, whether such exclamation proceed from one of the parties to the transaction, or from a bystander.

Thus it has been held that where the issue was whether · the deceased had "died by his own hand," his death having been caused by a pistol shot, that the declaration of the occupant of an adjoining room to that of the deceased, made immediately after the report of the pistol was heard, to the landlord of the hotel, that the deceased had shot himself, was held part of the *res gestae*. *Newton v. Ins. Co.*, 2 Dill. 154. This case follows, as ·stated therein, as being within its reasons and principles, that of *Ins. Co. v. Mosley*, 8 Wall. 397, where the declarations were made by the husband within a few moments after the fall which resulted in his death; thus showing that in the opinion of the court, in the former case, no distinction is to be taken between the involuntary exclamation of a bystander, and those of a party directly interested or injured.

In a case in Massachusetts where a suit was brought against a steamboat for injuries to a passenger by the fall of a gangway leading from a wharf to the defendant's boat, evidence was admitted that men working at the gangway were warned, immediately before the accident, that the plank was unsafe. *Parker v. Steamboat Co.*, 109 Mass. 449. So, also, in Alabama, in a suit against a railroad

company for ·injury to a passenger, where the plaintiff received injury in leaping from a car, while others who remained were unhurt, the declarations of such other persons giving their reasons for thus remaining, were held part of the *res gestae*. *Mobile R. R. Co. v. Ashcraft*, 48 Ala. 15. A similar rule in similar circumstances has been made in Illinois in respect to exclamations .of passengers. *Galena R. R. Co. v. Fay*, 16 Ill. 558. For these reasons we must hold the declarations of Cole admissible.

But they are admissible also for the additional reason that the remark of Cole was made directly to Walker, but elicited no response. The remark of Cole charged Walker in direct and emphatic terms with the commission of the crime, and prompted him by the strongest considerations to speak out in defense of his innocence, if innocent he really was. It is so instinctively natural for one, directly charged with some great crime, to repel the charge with an immediate and direct denial, that failure to do so is regarded as a tacit confession or admission of guilt, and as competent evidence thereof. *People v. McCrea*, 32 Cal. 98, and cases cited; *State v. Reed*, 62 Mo. 129; *Martin v. State*, 39 Ala. 523.

But we are not inclined to regard the testimony of Elliott respecting the remark made by the man when arrested, and the remarks of other persons after the difficulty was over, as competent evidence, as part of the *res gestae*. *State v. Brown*, 64 Mo. 367. The language of the man arrested, that he did not shoot White, and the language of the others that "Walker shot the man," constitutes a narrative of a past occurrence not contemporaneous with the main fact under consideration, nor so connected therewith as to illustrate its character. 1 Greenleaf Ev., § 108; 1 Wharton Ev., § 261. We have discovered no other error in the case than the one first adverted to, but it is impossible to tell just how far such incompetent evidence may have influenced the jury. See *State v. Thomas*, ante, p. 327.

. Did the evidence in this case as overwhelmingly establish the guilt of the defendant as in the case of the *State v. Owen, ante* p. 367, and as in other cases there cited, we should not reverse the judgment because of the error commented on, but as it is, we must reverse the judgment and remand the cause; and when the cause goes back, attention should be paid to the venue, as it is doubtful whether that was satisfactorily proven.

NORTON, J., absent; RAY, J., concurs; HOUGH, C. J., and HENRY, J., concur in reversing the judgment, but not in the last observation in the foregoing opinion.