THE STATE v. MULLINS, *Appellant.*

1. **Criminal Practice:** CONFESSIONS: CORONER'S INQUEST. Statements of a witness made at a coroner's inquest in the presence of the defendant are not subsequently admissible in evidence against him on the trial of the charge.

2. ———: DEFENDANT'S EXAMINATION. The evidence of such defendant given at the inquest, reduced to writing and signed by him, is, under the present statutes of the state (Revised Statutes, 1889, sec. 4318), competent evidence against him on the trial, provided he testified without compulsion.

3. ———: ———: PRESUMPTION. It will be presumed he testified of his own volition until the contrary appears.

*Appeal from Pettis Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED AND REMANDED.

*G. W. Barnett* and *W. D. Steele* for appellant.

(1) The court erred in permitting the state to prove what Newton Hughes said at the coroner's inquest. *State v. Young*, 99 Mo. 666; *People v. Willett*, 92 N. Y. 29; 3 Am. & Eng. Ency. of Law, 494. (2) The court also erred in admitting the evidence of defendant taken at his examination at the coroner's inquest. *People v. McMahon*, 15 N. Y. 384; *People v. Mindon*, 103 N. Y. 690; Wharton's Crim. Law, sec. 690; *State v. Thomas*, 99 Mo. 260; *State v. Hayden*, 45 Ia. 11. (3) The court erred in the instructions given in behalf of the state.

*John M. Wood*, Attorney General, for the State.

(1) The statements of Hughes at the coroner's inquest, made in the presence of defendant, were admissible in evidence. 1 Greenl. Ev., sec. 197; 1 Roscoe's Crim. Law, sec. 56; *State v. Miller*, 49 Mo. 505. (2) Defendant's written testimony taken before the coroner was admissible. *State v. Young*, 99 Mo. 666. (3) The instruction as to manslaughter in the second degree was proper under Revised Statutes, 1879, section 1243, and the instructions on self-defense are in accordance with the cases of *State v. Gilmore*, 95 Mo. 554; *State v. Partlow*, 90 Mo. 608. (4) The seventh instruction given for the state was proper. *State v. Hardy*, 95 Mo. 455. (5) The tenth and eleventh instructions, as to testimony of defendant and his wife, were approved in *State v. Young*, 99 Mo. 666, and *State v. Brooks*, 99 Mo. 137.

BLACK, J.—The defendant prosecutes this appeal from a conviction of manslaughter in the second degree, had upon an indictment for murder. The defendant, it is conceded by the evidence, shot and killed Henry Thatcher. The defense is justifiable homicide in self-defense.

The deceased was a negro, and the tenant of the defendant, residing in a house on the defendant's farm. There had been difficulty between the parties prior to the homicide, and there is much evidence to the effect that the deceased had whipped and kicked the defendant on several occasions; and that he had threatened to kill the defendant, which threats had been communicated to defendant. The deceased was a large, strong man, while defendant was quite the reverse. On the day preceding the killing, the defendant borrowed a pistol and purchased cartridges to fit it, stating to the person from whom he got the pistol that some one had been stealing his horses and he wanted to look after

them.    The remark must have had reference to deceased, as the defendant had suspected him of using the horses for purposes not contemplated in their lease.

The evidence shows that in the early morning of the thirteenth of July, 1886, the deceased went to the pasture lot to get the horses.    The defendant and one Newton Hughes, who lived with defendant, were in the pasture lot at that time.    There seems to be no doubt but the parties had some difficulty at this time, and that defendant shot from seven to twelve times from two pistols which he had on his person, killing the deceased.    Defendant went to the nearest justice of the peace, and gave himself up, and the justice in the course of two or three hours thereafter held a coroner's inquest over the body.    Persons who were at that inquest testify that they found the body in a ravine, ditch or wash-out, some two or three feet wide and eighteen inches in depth, lying close to a pile of brush, with six gunshot wounds.    The evidence tends to show that one ball passed through the apex of the heart, and another through the neck, breaking the spinal column.    The expert evidence is to the effect that the heart wound was fatal, though the deceased might have walked a few steps after receiving it, but the neck wound would instantly stop all voluntary locomotion.

The defendant testified in his own behalf, that he spoke to deceased about the oats as the latter came up ; that deceased cursed him, and picked up a club and started at him ; that he retreated towards Hughes for a short distance, and then commenced shooting, and that deceased fell within a few feet of that place.

Newton Hughes, who saw the whole affair, was not called as a witness on this trial by the state or by the defendant, though it seems he was within reach of the process of the court.    The justice who held the inquest testified that defendant and Hughes were present and both testified on that occasion ; that Hughes stated,

when giving his evidence, that the shooting took place at a place then pointed out, which was sixty or seventy yards from where the body was found. The justice says he cannot say whether these statements were made in the hearing of defendant or not. A person who was a juror on that occasion testifies that Hughes there stated, both in his evidence and before they commenced holding the inquest, that the shooting occurred at a place which he then pointed out, which was from forty to seventy yards distant from the body, and that the statements were made by Hughes in the presence of defendant, and were not questioned by the latter. Other persons who were jurors at the inquest gave evidence of a like character. The defendant objected to all of this evidence as to what Hughes stated at the inquest, but the objections were overruled, and the defendant excepted.

It is sought to justify the admission of these statements made by Hughes on the ground that they are to be treated as implied confessions. The rule of evidence which allows the silence of a person to be taken as an admission or confession of the truth of the matters stated in his presence should be applied with caution, for it is often much abused. The rule is based upon the assumption that the party is at liberty to speak, and proceeds upon the ground that the circumstances are such as to call upon him for a reply. The rule has no application whatever to statements given in evidence in a judicial proceeding; for in such cases he is not at liberty to interpose and contradict the evidence when and where he pleases. 1 Greenl. Ev. [14 Ed.] sec. 197; 3 Am. & Eng. Ency of Law, 494. Nor does the rule apply where he is under arrest. *State v. Young*, 99 Mo. 666, and cases cited. A coroner's inquest is a judicial proceeding (32 Mo. 375), and it follows that no inference can be drawn from the defendant's silence on that occasion, that he admitted the truth of the matters

stated by the witnesses when giving their evidence; and so it has been elsewhere held. *People v. Willett,* 92 N. Y. 29.

Some of these statements of Hughes, it is said, were made before the commencement of the examination of the witnesses; but so far as we can see they were conversations between Hughes and persons other than the defendant, and were not addressed to the defendant, or designed to induce any action on his part. It would have been an intrusion on his part to have interfered in these conversations to which he was not a party. It cannot be said that the natural and reasonable inference from his silence under these circumstances is, that he admitted the truth of the statements. The court should, therefore, have excluded them. 1 Greenl. Ev. [14 Ed.] sec. 197; *Kelley v. People,* 55 N. Y. 565; *State v. Young, supra.*

The attorney general suggests that the admission of the evidence does not constitute reversible error. To this suggestion we do not agree. The court gave an instruction based on the theory that if the defendant fired the fatal shot after the deceased had turned and abandoned all attempt to assault the defendant, then the defendant was guilty of manslaughter. On this theory the illegal evidence was of vital importance; for the expert evidence tends to show that the deceased must have dropped immediately after he received the shot in the neck. Nor does the evidence of the defendant taken at the coroner's inquest, hereafter noticed, go to the full extent of these statements made by Hughes.

The next objection is that the court erred in allowing the state to read on this trial the evidence of the defendant as it was given and reduced to writing and signed by him at the coroner's inquest. No question is made over the relevancy of this evidence; the question is, whether it was admissible at all.

The accused cannot, of course, be compelled to testify against himself; and it has been ruled, under

former statutes, that statements made by the accused
and taken down by an examining magistrate are not
competent evidence for the state or for the accused.
*State v. Marshall*, 36 Mo. 400.   Under our present
statutes, a defendant in a criminal case or prosecution
may testify if he sees fit to do so.   R. S. 1889, sec. 4218.
And on a preliminary examination before a justice of
the peace the prisoner may, at his request, be sworn
and examined as a witness in his behalf, under the
restrictions applicable to the examination of defend-
ants in the trial of criminal cases.   It would seem to be
clear that the evidence given by the accused on a pre-
liminary examination before a justice could be used
against him on a subsequent trial of the same case.   It
has been so held elsewhere under like statutes.   *People
v. Kelley*, 47 Cal. 125.   Now the defendant admitted
the killing, and it became the duty of the coroner's
jury to determine whether the deceased died by felony
or accident.   If any crime had been committed it had
been committed by the defendant, and this was well
known.   It was the duty of the coroner to swear the
witnesses, and have their evidence reduced to writing
and signed by the witnesses.   Treating the defendant
then as one occupying the position of a defendant at
the preliminary examination, the evidence was compe-
tent, provided he testified of his own volition and not
by compulsion.

One of the jurors at the inquest says he wrote down
defendant's evidence in his presence, read it over to
him, and that he signed it.   The defendant says he
does not know that he made a statement to the jury ;
that they handed him a paper and he signed it but did
not read it over ; that as far as he recollects he had not
made a statement to the jury previous to the time he
signed the paper.   There is nothing in this evidence
which shows, or tends to show, that defendant gave his
evidence at the inquest by compulsion or otherwise
than of his own volition.   But it is further argued that

it should appear that the coroner informed the defendant of his rights, and that he was not bound to give evidence against himself. We have no statute like those in some states which are modeled after the statute of Philip and Mary. The substance of such statutes is given in Wharton's Criminal Evidence, [ 8 Ed.] section 666, and in Roscoe's Criminal Evidence [ 8 Ed.] top page 93. It will we seen they are unlike the statutes of this state of which we have been speaking. It will be presumed that the defendant testified before the coroner of his own accord until the contrary is made to appear, and that has not been done in this case ; so that the court did not err in admitting the defendant's evidence given on the former occasion.

Thus far we have treated the defendant as standing in the position of one on preliminary examination, when he gave his evidence before the coroner. It certainly puts him in no better position to say he was simply a witness on that occasion.

For the error before noted, the judgment is reversed and the cause remanded. All concur.

