**STATE of Missouri, Respondent,**

v.

**Glenn SAMUEL, Appellant.**

**No. 58781.**

Supreme Court of Missouri,
En Banc.

April 14, 1975.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Clarence Thomas, Assist. Attys. General, Jefferson City, for respondent.

Wallace N. Springer, Jr., and Gregory K. Johnson, Springfield, for defendant-appellant.

DONNELLY, Chief Justice.

Appellant, Glenn Samuel, was convicted of manslaughter in the Circuit Court of Douglas County, Missouri, and his punishment was assessed at ten years' imprisonment. Following rendition of judgment and imposition of sentence on January 19, 1973, an appeal was taken to the Missouri Court of Appeals, Springfield District. That court heard the appeal, adopted an opinion reversing and remanding for new trial, and, on August 14, 1974, transferred the cause to this Court, in accordance with the provisions of Supreme Court Rule 83.-02, V.A.M.R.; for the purpose of reexamination by this Court of the existing Missouri law regarding the "tacit admission" rule.

In 29 Am.Jur.2d, Evidence § 638, the "tacit admission" rule is described as follows:

"As a general rule, when a statement tending to incriminate one accused of committing a crime is made in his presence and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth—that is, as a tacit admission of the facts stated—or as indicative of a consciousness of guilt."

In Missouri, the scope of the rule has been more limited than in many states. The following conditions must be met in Missouri in order to render the rule operative: (1) the statement must be made in the presence and hearing of the accused. State v. Burk, 234 Mo. 574, 137 S.W. 969, 970 (1911); State v. Walker, 78 Mo. 380, 388 (1883); State v. Lovell, 235 Mo. 343, 353, 354, 138 S.W. 523, 525 (1911); State v. Kissinger, 343 Mo. 781, 786, 123 S.W.2d 81, 83 (1938); State v. Dowling, 348 Mo.

589, 598, 599, 154 S.W.2d 749, 755 (1941); State v. Allen, 235 S.W.2d 294 (Mo.1948), and State v. Thomas, 440 S.W.2d 467, 469, 470 (Mo.1969); (2) the statement must be sufficiently direct, as naturally would call for a reply. State v. Mullins, 101 Mo. 514, 518, 14 S.W. 625, 626, 627 (1890); State v. Glahn, 97 Mo. 679, 11 S.W. 260 (1888); State v. Burk, supra; State v. Walker, supra; and State v. Thomas, supra; and (3) the statement must not have been made at a judicial proceeding, or while the accused was in custody or under arrest. State v. Young, 99 Mo. 666, 674, 12 S.W. 879, 881 (1889); State v. Mullins, supra; State v. Dowling, supra; State v. Battles, 357 Mo. 1223, 212 S.W.2d 753 (Mo.1948); State v. Allen, supra, and State v. Phelps, 384 S.W.2d 616, 621 (Mo.1964).

The Court of Appeals' opinion, in questioning the tenability of the tacit admission rule, quotes extensively from the opinion written in Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904, 906, 909 (1967). In Dravecz, the defendant voluntarily appeared at State Police headquarters and submitted himself to questioning by a police officer. The police officer read to defendant a written statement which had been made by one Stockley. Dravecz made no comment at the end of the reading of the statement. At the trial the court permitted the statement to be read to the jury. The Supreme Court of Pennsylvania cited our Kissinger case, supra, but decided to abrogate the rule, rather than merely restrict its application, as this Court has done in Missouri. The Court said:

"The Superior Court, in affirming the conviction of the defendant, declared that it was bound by Commonwealth v. Vallone, 347 Pa. 419, 32 A.2d 889, which pronounced the proposition:

" 'The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused

although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made.'

\* \* \* \* \* \*

"The decisions of the Supreme Court of the United States in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, have, in effect, shattered the tacit admission rule as pronounced in *Vallone*. Whatever may be left of the rule after the enfilading fire of the Supreme Court is here overruled."

In Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (n. 37) the Court said: "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute \* \* \* in the face of accusation."

■ In Missouri, as noted above, the tacit admission rule has never been applied in a situation where the accused was "under police custodial interrogation." "In those jurisdictions in which the pre-Miranda tacit admission rule was conformable to Miranda \* \* \* of course, no new problem arose by virtue of Miranda." 3 Wigmore, Evidence, § 821, p. 310 (Chadbourn rev. 1970). Missouri is one of "those jurisdictions."

In his supplemental brief filed in this Court after transfer, the Attorney General states:

"The points to be made are simple. The conflict between the tacit admissions rule and the Fifth Amendment right against self-incrimination arises only when the rule is permitted to apply in custodial situations. That Pennsylvania has chosen to eliminate the rule rather than restrict its application to noncustodial cases, is based on judicial preference rather than any constitutional mandate. \* \* \*.

"The state submits \* \* \* that the tacit admissions rule, as employed in this state, does not offend or contravene the constitutional rights of the accused against self-incrimination, since that right attaches when the accused is under some legal compulsion or taken into custody. Miranda v. Arizona, supra. Missouri's tacit admissions rule does not and has never applied in those situations. Furthermore, the history of this rule and the carefulness with which it has been applied, more than justify its continued use."

We agree with the Attorney General, and decline to abrogate the tacit admission rule as it is applied in Missouri.

■ We turn then to the facts in this case and to the assertion by appellant that the trial court erred in "failing to suppress all evidence of statements allegedly made by deceased \* \* \* tending to incriminate defendant of the charge against him and of defendant's silence in respect thereto \* \* \*."

The assertion relates primarily to testimony given at the trial by Sheriff Troy Hancock. On October 31, 1971, Sheriff Hancock went to the home of Allen Wright where he found Wright lying just inside the doorway entrance. Appellant, Glenn Samuel, was sitting in the kitchen of the home. Sheriff Hancock asked Wright what was wrong but there was no reply. Sheriff Hancock told appellant to remain seated and then left to get Deputy Collins. When he returned, he asked Wright, "Who did it to you?", but there was no reply. Appellant continued to sit in the kitchen. Sheriff Hancock then left to radio for an

ambulance and returned to the house. His testimony as to what then transpired is as follows:

"Q When you got back in the house you say you first went again to Allen Wright?

"A That is right.

"Q To refresh my memory and the jury's memory was Allen Wright in the same position?

"A Yes.

"Q Could you tell whether he was alive or dead?

"A Yes, I could.

"Q Which one was it?

"A He was still alive.

"Q At that time where was the defendant?

"A He was still sitting at the same table, in the same chair at the table.

"Q About how many feet away, give us your best estimate, would that have been from the position of Allen Wright to the position of Glenn Samuel, the defendant?

"A To the best of my measurement or guess which I didn't measure I would say approximately 10 or 11 feet.

"Q Now, did you ask Allen Wright any questions?

"A I asked him who did this to him, yes, I did.

"Q What words did you use?

"A I said, 'Allen, who shot you?' or 'Who did this to you?'

"Q Did Allen Wright make any response to you?

"MR. JOHNSON: We object, your Honor, no proper foundation has been laid as to whether it was made in the presence of the defendant.

"THE COURT: Overruled.

"Q (By Mr. O'Neal) You may answer.

"A What was your question again?

"Q Did Allen Wright make any answer or statement to you when you asked him this question?

"A Yes, he did.

"Q What was his statement?

"A First he wanted me to get him to the hospital, he asked me again, I believe.

"Q When you say again what do you mean?

"A He asked me, I believe, one time before.

"Q When did he ask you about going to the hospital?

"A This is is the second time.

"Q Yes.

"A On the second trip he asked me to get him to the hospital or doctor.

"Q Was that before you asked him who had done this?

"A I believe it was, so near together. I believe it was.

"Q Did he answer your question about who did this?

"A On the third attempt, I believe, he did.

"Q What was his answer?

"A He said—he kind of raised his finger up a little bit and pointed his finger in the other room.

"Q What room was that?

"A Kitchen.

"Q Was that the same room Glenn Samuel was in?

"A Yes.

"Q Did he say anything?

"A He said, 'Glenn Samuel.'

"Q You heard that?

"A Yes, I did.

"Q Did you have any difficulty hearing that?

"A It was weak but I heard it.

\* \* \* \* \* \*

"Q While this conversation with Allen Wright was going on inside where was Glenn Samuel?

"A Still sitting at the table in the chair.

"Q When you asked this question to Allen Wright did Glenn Samuel get up or say anything to you?

"A I don't believe he did.

"Q Did he say anything as to this conversation?

"A No.

\* \* \* \* \* \*

"Q Glenn Samuel didn't make any statement?

"A No."

The testimony of Sheriff Hancock, supra, shows that the accusation against the appellant, spoken by Allen Wright to the Sheriff, was *weak*. On cross-examination, the Sheriff testified that the distance between Wright and appellant was approximately 10–11 feet and that "from where Mr. Wright was laying he couldn't see the chair" in which appellant was sitting. Deputy Sheriff Collins testified that he was standing next to Allen Wright, across from Sheriff Hancock, and that from where he was standing he would have to lean back and look around the corner into the kitchen in order to see Glenn Samuel.

In these circumstances, we believe the failure to exclude Sheriff Hancock's testimony as to appellant's "tacit admission" constitutes prejudicial error.

The judgment is reversed and the cause remanded to the Circuit Court of Douglas County for new trial.

All concur.