STATE of Missouri, Respondent,

v.

Walter C. PEEBLES, Appellant.

No. 37231.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 9, 1978.

Motion for Rehearing and/or Transfer
Denied July 14, 1978.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Frank Anzalone, Asst. Public Defender, William J. Shaw, Public Defender, Clayton, for appellant.

SMITH, Judge.

Defendant appeals from his conviction by a jury of assault with intent to do great bodily harm with malice and the resultant twelve year sentence imposed by the court pursuant to the second offender act. We affirm.

On appeal defendant raises two points. Neither challenges the sufficiency of the

evidence to support the verdict, but both points require review of the evidence. Defendant was in custody in the St. Louis County Jail in Clayton. On the night of the crime defendant decided to sleep in the dayroom of tank number 3 rather than in a cell. Each tank consisted of three eight man cells and a dayroom. Prisoners had the option of sleeping in a cell or in the dayroom. Two other prisoners, Brown and Stanton, also stayed in the dayroom for the night. Brown and Stanton were playing cards and watching television. Defendant watched television for awhile and then went to sleep. About 3 a. m. defendant awoke and requested that Brown and Stanton be quieter. Brown testified that defendant then got up, said, "its killing time" and came after Brown with a razor blade held in a piece of cardboard. Defendant slashed at Brown causing a cut on Brown's ear and then pursued Brown around the dayroom slashing at him until guards entered the dayroom. .

Defendant testified that Brown and Stanton were homosexual sweethearts and were playing cards when he woke up. Upon defendant requesting them to quiet down, Brown approached defendant and stated, "No, you are not talking to me, I should be fucking you." Defendant heard Brown ask Stanton for "the matchbook" and then as Brown approached observed a razor blade in Brown's hand. When Brown attempted to strike defendant with the blade, defendant knocked it out of Brown's hand and removed it from the floor after scuffling with Brown. At some point during Brown's attack, Brown said something to defendant about "sucking his penis." As defendant recovered the blade, he heard Brown yell to Stanton to get "the needle." Defendant further testified that when he slashed Brown on the ear and during the chase he feared his life was in danger from Brown and Stanton. He stated that when

the guards entered the dayroom he no longer feared a "sexual assault" and immediately stopped and gave the blade to the guard captain.

The testimony of the guards did not cast any light on the beginning of the conflict, but did support the testimony of both participants that defendant was chasing Brown around the dayroom. It also supported defendant's testimony that as soon as the guards entered the dayroom defendant stopped and handed the blade to the captain. At that time defendant also said, "I cut the nigger. Get me out of here." [1]

Defendant's first point is that the court erred in allowing two of the guards to testify that defendant did not volunteer an exculpatory statement indicating he had acted in self-defense. The testimony of the guards related to the time immediately after the guards entered the dayroom. It is clear in Missouri that the silence of an accused when not under arrest and in circumstances such that only a guilty party would remain silent, is admissible as being in the nature of an admission against interest. *State v. Butler*, 512 S.W.2d 466 (Mo. App.1974) [1, 3]. It is equally clear that such silence may not be shown while an arrest is being made or after arrest, or when the defendant is "in custody." *State v. Butler, supra; State v. Taylor*, 472 S.W.2d 395 (Mo.1971) [1]; *State v. Starkey*, 536 S.W.2d 858 (Mo.App.1976) [1, 2]; *State v. Burnett*, 429 S.W.2d 239 (Mo.1968) [2]. Defendant relies heavily upon the fact that he was under arrest and in custody at the time the silence occurred.[2] We do not find that that fact controls in this particular situation. The arrest and custody involved was not because of the offense about which defendant was partially silent. The presence of the guards was not for interrogation purposes, they came to the dayroom

---

1. Defendant, Brown and Stanton are black.

2. We do not reach the question raised *ex gratia* by the dissent of whether the defendant's silence or statements were in response to accusatory questions. At trial, in his motion for new trial and in his brief in this court defendant has

restricted his claims of error to his fifth amendment contentions revolving around his custodial status. No challenge has been leveled or briefed on the applicability of the "tacit admission" rule except as it applies to defendant being in custody.

solely to stop an altercation. At the time of the guards' arrival, they had no knowledge of what the circumstances surrounding the altercation were, who had been the aggressor, or whether an offense had actually occurred. Defendant's statements and non-statements appear to have been volunteered or at most were in response to general information questioning directed at finding out what was going on. Under the circumstances here, it was unnecessary for the guards to enter the dayroom shouting *Miranda* warnings to make defendant's statements or silence admissible. Defendant's statements on some matters and silence on others were not the product of interrogation or of his custody. There was no error in admitting the testimony of the guards.

■ Defendant's second point is that he was entitled to have included in the court's self-defense instruction not only his belief in the danger of death or serious bodily harm but also that if he believed or had cause to believe he was in danger of a felonious sexual assault he had a right to defend himself. An instruction on resisting a felony is required if supported by the evidence. *State v. Robinson*, 328 S.W.2d 667 (Mo.1959) [1, 2]; *State v. McQueen*, 431 S.W.2d 445 (Mo.1968) [1–4]. We do not find such evidence here. Throughout the defendant's testimony he expressed his fear of bodily injury. While there was evidence that Brown made references to sodomitic activities, there is no evidence that defendant was defending himself from sexual advances rather than from the threatened physical injury from the razor blade and "needle." Nor do we find credible defendant's assertion that the jury may have believed that had defendant submitted to sexual advances it would not have been necessary to otherwise defend himself. There is no evidence that Brown made any suggestion of consensual sodomy or that defendant believed he had any such choice. While a jury could infer that underlying the threat by Brown of bodily injury was an intention to commit a felony, it was not that underlying crime against which defendant was protecting himself but rather the threatened bodily injury necessary to

commit that crime. Those cases relied upon by defendant involve circumstances in which no threat of great bodily injury was present, only the threat of some felonious conduct. We find no error in the court's self-defense instruction. See *State v. Thornton*, 532 S.W.2d 37 (Mo.App.1975).

Judgment affirmed.

CLEMENS, P. J., concurs.

McMILLIAN, J., dissents in separate opinion.

McMILLIAN, Judge, dissenting.

I dissent from that portion of the majority opinion which holds that the trial court did not err in allowing two of the guards to testify that the defendant did not volunteer an exculpatory statement indicating that he had acted in self-defense.

The "tacit admission" rule may be stated as follows:

"As a general rule, when a statement tending to incriminate one accused of committing a crime is made in his presence and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth—that is, as a tacit admission of the facts stated—or as indicative of a consciousness of guilt. . . ." 29 Am.Jur.2d, Evidence § 638 (1967). *See generally* 31A C.J.S. Evidence § 295 (1964).

As discussed in *State v. Samuel*, 521 S.W.2d 374 (Mo.1975), there are three conditions which must be present for the rule to become operative in Missouri. These are: (1) the statement must be made in the presence and hearing of the accused; (2) the statement must be sufficiently direct, as naturally would call for a reply; and (3) the statement must not have been made at a judicial proceeding, or while the accused was in custody or under arrest. *Id.* at 375.

Applying these general principles to the present fact situation, it appears as though the "tacit admission" rule is not operative.

The first requirement that must be present to render the rule operative is that there must be a statement made which tended to incriminate one accused of committing a crime. The statement *must* be one of accusation. There were no such statements made. As the guards entered the cell to stop the altercation which was taking place between defendant Peebles and Richard Brown, the guard made inquiry as to what was happening. The guard, Milton Wright, on direct examination, testified that he asked the defendant what he was doing; however, he could not recall what his exact words were. In addition, the victim, Richard Brown, testified that guard Wright had, upon entering the cell, asked the defendant what he was doing. Thus, the purport of the statement made was at most a general inquiry into what was happening. The majority even concedes this, as the learned author states that "at the time of the guard's arrival, they had no knowledge of what the circumstances surrounding the altercation were, who had been the aggressor, or whether an offense had actually occurred. Defendant's statements and non-statements appear to have been *volunteered or at most were in response to general information questioning directed at finding out what was going on.*" (Emphasis added.) Therefore, as the majority apparently concedes, the statement made to the defendant was not one which was incriminatory or accusatory in nature, at most it was one of general information questioning. Hence, the "tacit admission" rule is inoperative, and testimony that the defendant did not make an exculpatory statement indicating that he had acted in self-defense should have been excluded as an infringement upon the defendant's Fifth Amendment privilege against self-incrimination.

My second ground for disagreement is as follows. It is a general rule that before an admission by silence can be admitted, physical or emotional impediments to responding must not be present. McCormick on Evidence, § 270 (2nd Ed. 1972); *Creager v. Chilson*, 453 S.W.2d 941, 943 (Mo.1970). In the *Creager* case, the defendant was a highly excited and upset, seventeen year old girl, who had just been party to an automobile accident. Although the court admitted the testimony concerning her silence to accusatory statements on other grounds, it was implied that such circumstances where the defendant was emotionally upset at the time the accusatory statements would have warranted the silence. Applying this principle to the present situation, it definitely appears as though the circumstances were such that it would be unreasonable to expect a full and complete statement as to what prompted the altercation. A person, in jail, who allegedly had just been threatened with homosexual rape, and who had just had a physical altercation, would definitely have been in an excited and upset state. It would be unreasonable to expect a full recounting of the events which led to the altercation at the time the fight was stopped and emotions were running high.[1] Had there been a cooling off period, a different result might be presented. However, under these circumstances, a full reply can not be expected, and any silence at this point should not be used against a criminal defendant.

My third ground for disagreement is as follows. The majority argues that the "tacit admission" rule is operative because the defendant was not under custody. The majority opinion claims that, "The arrest and custody involved was not because of the offense about which the defendant was partially silent." This construction of the term "custody" appears *too narrow* in light of the serious abuses which may result otherwise.

The New Jersey Supreme Court has recently discussed these possible abuses where it stated:

---

1. "It may be desirable and dramatic for the wrongly accused person to shout: 'I am innocent !' but not everybody responds spontaneously to stimuli. . . . There are persons so sensitive and hurt so easily, that they swallow their tongue in the face of overwhelming injustice." *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904, 906 (1967).

"Some courts have been rather uncritical about this kind of evidence with the result that the rule has been subjected to considerable abuse in certain jurisdictions. For example, it has become the practice of some police to make wholesale accusations against one who may not even yet be formally an accused, or against one who is in jail. If the unfortunate 'declarant' abides by the maxim that 'silence is golden' and holds his tongue, he may find police accusations brought into court against him as substantive evidence, as an adoptive admission by silence." Report, New Jersey Supreme Court, Committee on Evidence, 164 (1963).

In light of such possible abuse of the concept "custody," and because one's Fifth Amendment privilege against self-incrimination is involved, I feel that the term "custody" should be construed broadly so as to encompass any situation where physical incarceration is involved. The majority has cited no authority for his definition of "custody," and I submit that such a narrow construction is not called for under these circumstances.

For the above reasons I would reverse and remand the cause for a new trial.