**Joseph M. ZIEGLER,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 16862.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 10, 1990.

Motion for Rehearing or Transfer Denied
Oct. 30, 1990.

---

**162**

Ellen H. Flottman, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Judge.

Movant Joseph M. Ziegler (movant hereafter) was convicted and punishment was set by a jury as follows: Burglary second degree (5 years), felony stealing (5 years), and arson (15 years). The trial court entered judgment accordingly, with sentences to run consecutively. This court affirmed the judgment on direct appeal. *State v. Ziegler*, 719 S.W.2d 951 (Mo.App.1986).

Movant now appeals from the judgment in denial of his motion to vacate judgment and sentence pursuant to Rule 29.15.

■ Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j). The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Sloan v. State*, 779 S.W.2d 580, 582 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990); *Day v. State*, 770 S.W.2d 692, 695–96 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

In Point I on appeal, movant charges that trial counsel was ineffective in failing to file a motion prior to trial asking that movant be tried separately from a codefendant, Richard Ziegler, brother of movant. Movant claims that failure to try his case separately allowed the jury to consider an out-of-court hearsay statement which was admissible against the codefendant, but was not admissible against the movant. It is claimed that trial counsel should have filed a motion for separate trials pursuant to Rule 24.06 which then read, in part, as follows:

(a) Any defendant jointly charged with one or more defendants with the commission of any felony other than under the provisions of Sections 566.030 or 566.060, RSMo, upon his motion made prior to the commencement of trial, shall be tried separately. In the absence of such a motion such jointly charged defendants shall be tried jointly or separately as the court in its discretion may order.

The out-of-court statement, which movant claims demonstrates ineffectiveness of trial counsel in not moving to sever movant's trial from that of his codefendant brother, occurred under the following circumstances. George Tucker, a 17-year-old nephew of movant and codefendant, went to a barbecue on the Meramec River on August 10, 1984, the day of the commission of the crimes for which movant and code-

fendant were convicted. Movant and codefendant were at the barbecue.

Q. [To George Tucker]: Who else was there [at the barbecue]?

A. Richard and Joe and Brian Johnson and my sister Shelia.

Q. By Richard and Joe, do you mean the defendants Richard Ziegler and Joseph Ziegler?

A. Yes sir.

Q. What were you barbecuing?

A. Some ribs and some steaks.

Q. Some meat?

A. Yes sir.

Q. Who brought the meat there to barbecue?

A. Richard and Joe.

Q. Did they make any statements to you as to where it had come from?

Trial counsel for movant and codefendant thereupon objected, saying that, "the State has not yet established corpus delicti of the crimes charged and therefore until the corpus delicti is established by independent means no extra judicial statements of the defendants are available, either admissible or to support a conviction." The objection was overruled, and the following ensued:

Q. Mr. Tucker, did anyone make a statement to you as to where the meat had come from?

A. Richard told me that they had broke into a house.

Q. Did he tell you anything else?

A. Other than the meat that they had took some watermelons and a digital alarm clock and a little bit of money.

Q. Who did he say had broken into the house?

A. Him and Joe.

Q. Did they make any statements, anything else about the house that they had done?

A. They made the statement, Richard did, that they had set the house on fire.

* * * * * *

Q. Richard is the one who told you that?

A. Yes sir.

Q. And that was in the afternoon of August the 10th?

A. Yes sir.

Cross-examination of George Tucker included the following:

Q. Why did you have occasion to be there [at Meramec River at the barbecue] on that day?

A. They asked me if I wanted to go to the river with them.

Q. Who asked you specifically?

A. Joe and Richard.

As Tucker was being asked about his memory of events, he said:

Q. But you remember what Joe and Richard said, is that correct?

A. I remember what I was told.

Witnesses at the Rule 29.15 hearing were codefendant Richard Ziegler, movant, and the attorney who represented them at the time of trial (hereafter "trial counsel"). The codefendant testified he and movant had met with trial counsel "two or three" times to discuss the case before trial, "[s]ometimes at his office and sometimes when we come [sic] to court." When asked if he told his trial counsel about his statements to George Tucker at the barbecue, codefendant answered:

A. [By Richard Ziegler]: No. There was supposed to have been something said, but *I told him I didn't say nothing to him about it.* (Emphasis added.)

The codefendant denied he ever discussed the possibility of a separate trial with trial counsel. He said trial counsel never mentioned separate trials as a possibility.

Movant testified at the Rule 29.15 hearing that all meetings with trial counsel occurred when he and the codefendant were both present. He said he first learned that he had a right to a separate trial after his conviction; trial counsel never told him of a right to separate trials. When asked about the barbecue at the river when the statement by codefendant was allegedly made to George Tucker, movant first said he could not remember if there was a barbecue at the river. Upon further questioning, the following occurred:

Q. ... Was there a barbecue at the river on that date; do you remember?

A. [By movant]: No I don't remember.

Q. So, there could have been, but you just don't remember now?

A. I believe there was, yes.

Q. And were you there?

A. Yes.

Q. And your brother was there?

A. Yes.

Q. And George Tucker was there?

A. Yes.

Upon re-direct examination, movant's testimony about the barbecue at the river was as follows:

Q. ... Now, about this barbecue that you mentioned to Mr. Broshot, is it your testimony, then, that there might have been a barbecue, or do you remember one, or what is your testimony as far as that barbecue is concerned?

A. I remember we was on the river when he supposedly made this statement.

Q. Do you remember being on the river, or do you remember Mr. Tucker testifying that you were on the river?

A. I remember him testifying that we was supposed to have been on the river when we made this statement.

Q. Okay. But, what is your memory as to being on the river at a picnic?

\* \* \* \* \* \*

A. I don't recall.

Movant said he never knew about George Tucker's claim that codefendant had told Tucker about committing the crimes until he heard it from Tucker at the trial.

Trial counsel testified that he didn't try to obtain separate trials because after having discussed that issue, first with movant and codefendant together, then with each of them individually, and again with them together, they informed him that "they wished to be together at the trial and to be tried together." He said two points were discussed with his clients. First, was the potential for conflict in representing both of them. Trial counsel said both clients consistently and throughout denied their participation in the crimes. Second, "I discussed with them that they had the right to separate counsel, ... and that, if they desired, I would obtain other counsel for one

of them." Movant and codefendant told trial counsel they wanted the same attorney to represent both of them and to be tried together. Trial counsel said he discussed this with them on more than one occasion and each time they indicated "they wished to have the same attorney and to proceed in the same trial." Trial counsel said he knew about George Tucker's statements before preliminary hearing (from police reports), and he passed that information on to his clients.

Q. [To trial counsel]: ... And did you pass this [George Tucker's statements] on to your—

A. Yes.

Q. —clients?

A. We reviewed the police reports before preliminary hearing and several times after preliminary hearing. And—

Q. So, they knew about this all along?

A. And as I recall, George Tucker testified at preliminary hearing about this supposed conversation.

Q. Did he testify that Joseph Ziegler was present at the time Richard supposedly said these things?

A. My recollection of this testimony— And, of course, the transcript of the trial will serve as a better record. My recollection is that his testimony was that they were at the river, subsequent to the day of the crime. He was present, George Tucker—George Tucker was present, Richard Ziegler, and Joseph Ziegler were present, along with some other people. And that, at that time, with all of them there together, Richard Ziegler had said to George that they had taken this stuff from that residence.

When trial counsel was asked if the statement of George Tucker gave rise to a potential conflict for him in representing these two individuals, he responded:

A. ... Only possibly. My understanding of the law is that, if this statement was made by Richard Ziegler in the presence of his brother, Joseph, and of the person who testified to it, George Tucker, that it could be

used against either of them because there was no response back from Joe saying, "No, this didn't happen," or something of that type.

It's my understanding it could be used against both of them. However, you will notice I did object to it in the—at the trial.

Q. Did—At the time you discussed the potential conflict with them, did you ask Richard and Joseph Ziegler if they had been present at this barbecue on the river or—

A. They both denied that either of them had made any statements of this type to George Tucker—

Q. Okay.

A. —all the way through the proceedings.

Trial counsel then explained that even though he recognized the George Tucker statement as hearsay he didn't perceive a need for a separate trial because "[a]lthough it was hearsay against one, there is an exception to the hearsay rule— ... statements made in his presence that he does not deny. And, no, it did not cause me to think a separate trial was necessary or desirable."

The trial court found that the testimony of movant and codefendant was not credible on the allegations of ineffective assistance of counsel. Movant's Rule 29.15 motion was overruled. The order overruling the motion is the subject of this appeal.

■ "Trial counsel is presumed to be competent, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and is vested with broad discretion in conducting a defense." *Schneider v. State*, 787 S.W.2d 718, 720–21 (Mo. banc 1990). Movant must show his trial counsel was ineffective and he was prejudiced in order to show ineffective assistance of counsel pursuant to *Strickland v. Washington*. *Schneider v. State, supra*, at 721. To prevail on a claim of ineffective assistance of counsel, the movant had to show that trial attorney's performance fell below the standard of care and skill of a reasonably competent attorney rendering similar services under the existing circumstances,

and that the movant was prejudiced by such deficient performance. *Seales v. State*, 580 S.W.2d 733, 735 (Mo. banc 1979); *Trice v. State*, 792 S.W.2d 672, 674 (Mo. App.1990).

Movant claims that codefendant's statement to George Tucker was clearly inadmissible as to movant because it was hearsay. He further relies upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to argue that since codefendant did not take the stand, reversible error was committed because the codefendant was not subject to confrontation or cross-examination. However, that argument misconceives the nature of the postconviction Rule 29.15 proceeding. "Claims of trial error are not cognizable in a Rule 29.15 motion except where fundamental fairness requires otherwise, and then, only in rare and exceptional circumstances." *Schneider v. State*, 787 S.W.2d at 721; *Walls v. State*, 779 S.W.2d 560, 563 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).

■ The evidence here would indicate that trial counsel was aware of the "tacit admission" rule which allowed admission of evidence of movant's failure to deny statements made in his presence which tend to incriminate him. *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. banc 1975). "The Missouri tacit admission rule requires that (1) the statement is made in the presence and hearing of the accused, (2) the statement is sufficiently direct as naturally would call for a reply, and (3) the statement must not be made at a judicial proceeding or while the accused was in custody or under arrest." *State v. Clark*, 711 S.W.2d 928, 931 (Mo.App.1986). There was evidence that trial counsel believed the statement of George Tucker was admissible against movant because Tucker claimed movant and codefendant were together at the barbecue when the statement was made by codefendant, and movant made no response. That was a correct understanding of the law. *See State v. Valentine*, 646 S.W.2d 729 (Mo.1983).

Trial counsel asked movant and his codefendant brother repeatedly about severing the cases and getting them separate lawyers, but they declined. Further, throughout the proceeding, movant and codefendant continually told their lawyer that neither "of them had made any statements of this type to George Tucker," and that they wanted the same lawyer and wanted to be tried together. Movant and codefendant deny these facts, but review of the evidence at the motion hearing makes it clear that movant had difficulty deciding whether he should remember being at the barbecue or he should not remember being present. In any event, in deciding whether the motion court's ruling is erroneous, the trial judge, as the trier of fact, is free to determine the credibility of witnesses and evidence. *Wilson v. State*, 786 S.W.2d 205, 207 (Mo.App.1990); *Shaw v. State*, 766 S.W.2d 676, 680 (Mo.App.1989). This court finds no error in the motion court's finding that the testimony of movant and codefendant were not credible.

The choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987); *Wilson v. State, supra,* at 207. In this case, the trial court found that an experienced public defender chose to try movant and codefendant together, as a trial strategy, in which both defendants concurred. This was done with knowledge by trial counsel of the possibility that the statement of codefendant to George Tucker could be excluded if not made in the presence of movant. The trial record does not clearly indicate that the statement by codefendant to George Tucker was made in movant's presence. However, there certainly is evidence that trial counsel, knowing of the "tacit admission rule," believed before trial that the testimony by George Tucker as to codefendant's statement, would be admissible against movant. In hindsight, had trial counsel

known that the evidence as adduced at trial might be less than clear on the issue of admissibility of George Tucker's testimony against movant, it may have been a better strategy to have severed the cases. However, "[e]very effort must be made to eliminate the distorting effects of hindsight, the questioned conduct being evaluated from trial counsel's perspective at the time." *Schneider v. State*, 787 S.W.2d at 721. The findings of the motion court are not clearly erroneous. Point I is denied.

In Point II movant claims the motion court erred because it failed to comply with Rule 29.15(i).[1] Movant argues the trial court failed to make findings with respect to the allegations in the pro se motion, "which included claims of ineffective assistance of counsel not raised in the amended motion, since the amended motion addressed by the motion court was untimely and a nullity." The legal file reflects that the pro se Rule 29.15 motion was filed June 1, 1988. On July 13, 1988, counsel was appointed for movant. Post-conviction counsel filed an unverified amended motion on October 24, 1989. Movant correctly urges that because the amended motion was untimely[2] and unverified, the grounds asserted in the amended motion were waived and the motion itself was a legal nullity. *Klaus v. State*, 782 S.W.2d 455, 456 (Mo.App.1990); *Batson v. State*, 774 S.W.2d 882, 884–85 (Mo.App.1989). In *Klaus v. State*, after holding the untimely 29.15 motion was a legal nullity, the court said:

The motion court, therefore, should have considered only the *pro se* motion of the movant and should not have given any consideration to the amended motions. A review of the findings of fact and conclusions of law, however, reveals that the motion court failed to do so. *Several points raised in the pro se mo-*

---

1. In pertinent part, Rule 29.15(i) says: "The Court shall issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held, within thirty days of the submission of the case...."

2. Rule 29.15(f) provides, in part: "Any amended motion shall be verified by movant and shall be filed within thirty days of the date counsel is appointed.... The court may extend the time for filing the amended motion for one additional period not to exceed thirty days...."

*tion, thus, were not addressed by the motion court.*

*Id.* at 456 (emphasis added). *Klaus v. State* does not aid movant. Unlike *Klaus v. State,* the points raised in the pro se motion in this case were identical to those raised in the amended motion. As the motion court made its findings of fact and conclusions of law on the points raised in the amended motion (which was a nullity because untimely and unverified), it was addressing and considering exactly the same points raised in the pro se motion. To reverse and remand to require the motion court to enter a new order referring to the pro se motion rather than the amended motion would be a meaningless exercise where the points and issues in each of the motions were identical. Rule 29.15(i) requires the court to issue findings of fact and conclusions of law on *"all issues presented."* The mandate that all issues presented should be addressed by the motion court was the focus of *Klaus v. State.* The record in this case clearly indicates that the motion court's judgment did address all issues raised in the pro se motion.[3] Point II is denied.

Throughout its opinion, the motion court did refer to the "amended motion." Pursuant to Rule 84.14, this court is to give such judgment as the trial court ought to give. Accordingly, paragraph 6 of the conclusions of law entered by the trial court is ordered deleted as presently written. In lieu thereof, paragraph 6 shall now read:

6. Movant's amended motion is a nullity because it was untimely filed and was not verified. However, the points raised in the amended motion were identical to those raised in the pro se motion, and throughout this opinion when issues are addressed by reference to paragraph number in the amended motion, reference is also made to that same issue in the pro se motion.

Finally, the judgment portion of the motion court shall be amended so that it now reads: "WHEREFORE, it is by the Court ORDERED, ADJUDGED and DECREED that movant's pro se Motion to Vacate and Set Aside or Correct Judgment and Sentence be and is hereby overruled."

As modified, the judgment is affirmed.

FLANIGAN, C.J., and PARRISH, P.J., concur.

---

3. The motion court's judgment recites (second paragraph, first page) that the court considered "the pleadings filed herein" in making its findings of fact and conclusions of law. That certainly would have included consideration of the original pro se motion.